[Civ. No. 29222.    Second Dist., Div. Two.    May 19, 1966.]

FRANK WOODWORTH, Plaintiff and Appellant, v. DORA DEANE WOODWORTH, Defendant and Respondent.

Harold Drooz for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

HERNDON, J.—Plaintiff appeals from the judgment denying him the divorce he sought by reason of the acts of mental cruelty committed by his wife. Plaintiff's complaint alleged that the parties had married in Carson City, Nevada, on February 12, 1964, and separated two months later on April 13, 1964. They had acquired no community property and there were no children the issue of their marriage. Service of summons in the action was by way of publication, since the last communication plaintiff had received from defendant was a letter on which she had written the return address "Gen. Delivery, Palm Springs, Calif." No answer to the complaint was filed and defendant's default was duly entered.

At the trial, plaintiff testified that during the extremely short duration of their marriage, defendant had left him three

times stating on each occasion that she did not love him. After her last departure she telephoned him and wrote him two letters, in each instance expressing her desire to terminate the marriage. These letters were introduced into evidence.

In her first letter dated April 22, 1964, defendant commented upon the fact that plaintiff "didn't seem anxious" to obtain a divorce and she therefore threatened to file a separate maintenance suit against him in which she would seek $200 per month alimony. In her second letter dated May 4, 1964, defendant had written:

"I talked to Mother on the phone yesterday, and she said you had called her several times. As I ask before, I really wish you wouldn't keep calling her, because it just makes her worry more about everything, and she really doesn't know any more than you do. . . . Frank, I think it would do you good to go back to Denver or Kansas City for awhile, where you could run around with Cecil & your old friends. You know down deep that it just isn't going to work out with us, so why make matters worse than they already are. You know I want a divorce, but, you say you won't get it, and you know I sure don't have any money to pay for it, so guess we will either have to have a separate maintenance like I mentioned in my other letter, or else I will have to wait until you want it bad enough to get it."

One witness called by plaintiff testified that she had known him for five years and that he had resided continuously in Los Angeles County for one year preceding the filing of the instant action. She also testified that he had shown her the letters he had received from his wife and that she had observed that he "was unhappy, very despondent."

Another witness testified that she had known defendant for some two and one-half years and had seen the parties together. She testified that defendant had come to her just a week after her marriage and told the witness that she had left plaintiff and did not intend to return to him. However, defendant did return for a brief period but she again visited the witness after her final departure and told her that she didn't love plaintiff and that the marriage had been a mistake.

It has long been the established rule in California that it is error to refuse to grant an interlocutory decree of divorce in an uncontested case where the evidence of plaintiff, adequately corroborated, fully establishes a ground for divorce. (*Kirkpatrick* v. *Kirkpatrick*, 152 Cal. 316 [92 P. 853].)

Further, as stated in *De Burgh* v. *De Burgh*, 39 Cal.2d

858, 863-864 [250 P.2d 593] : ''In a divorce proceeding the court must consider not merely the rights and wrongs of the parties as in contract litigation, but the public interest in the institution of marriage. The family is the basic unit of our society, the center of the personal affections that ennoble and enrich human life. It channels biological drives that might otherwise become socially destructive; it ensures the care and education of children in a stable environment; it establishes continuity from one generation to another; it nurtures and develops the individual initiative that distinguishes a free people. Since the family is the core of our society, the law seeks to foster and preserve marriage. *But when a marriage has failed and the family has ceased to be a unit, the purposes of family life are no longer served and divorce will be permitted.* '*[P]ublic policy does not discourage divorce where the relations between husband and wife are such that the legitimate objects of matrimony have been utterly destroyed.*' [Citations.]'' (Italics added.)

It is clear from the instant record that the trial court accepted the testimony of plaintiff as truthful in character, and, despite the paucity of detail, there is certainly nothing therein indicative of fabrication. It is equally apparent that one spouse has treated the other with extreme cruelty where almost immediately after the performance of the marriage ceremony she informs the other that he is not loved, that the marriage was a mistake, that she has no intention of continuing it or fulfilling her obligations thereunder, and confirms the seriousness of these intentions by leaving him three times within the first two months and ultimately rejecting his efforts to secure a resumption of the marital relationship.

The sole ground enunciated by the trial court for denying plaintiff relief was its belief that it was powerless so to do by reason of section 130 of the Civil Code which provides: ''No divorce can be granted upon the default of the defendant, or upon the uncorroborated statement, admission, or testimony of the parties, or upon any statement or finding of fact made by a referee; but the court must, in addition to any statement or finding of the referee, require proof of the facts alleged, and such proof, if not taken before the court, must be upon written questions and answers.''

The trial court indicated that it felt that since defendant had expressed *her* desire that a divorce be obtained, plaintiff should be denied a divorce because his ultimate decision to seek relief by reason of his wife's wrongful conduct presented

a situation in which both parties had "agreed" to a divorce. Such a conclusion is based upon a misconception of the purpose and effect of section 130.

Section 130 is primarily designed to prevent collusion between the parties. (*MacDonald* v. *MacDonald,* 155 Cal. 665, 671 [102 P. 927, 25 L.R.A. N.S. 45].) However, collusion is not presumed absent unreasonable delay in commencing the action (Civ. Code, § 125), and there is nothing whatever in the instant record tending to indicate collusion. Plaintiff's testimony was corroborated by defendant's letters (cf. *Fulton* v. *Fulton,* 220 Cal. 726, 727 [32 P.2d 634]) which, *inter alia,* referred to plaintiff's initial refusal to seek a termination of the marriage despite the existence of grounds therefor created by defendant's previous wrongful conduct.

The facts upon which plaintiff's cause of action is based were further adequately corroborated by the testimony of the witness to whom defendant had confirmed her expressed lack of love for plaintiff and her insistent refusal to fulfill her marital obligations. Finally, the fact of the wife's abandonment of plaintiff and the effect upon him of the letters which she wrote to him was corroborated by the testimony of his second witness to whom he had shown these letters.

It is true, of course, that defendant's acts of cruelty toward plaintiff did not entitle *her* to a divorce. However, *her* desires in the premises are essentially immaterial. One spouse might well beat the other savagely, engage in flagrant acts of adultery and desert the other for the statutory period, all for the announced purpose of forcing the other to obtain a termination of the marriage. Manifestly, such conduct would not entitle the offending spouse to a divorce, but, absent some evidence suggesting that the acts were committed with the consent or agreement of the "injured" spouse for the purpose of furnishing the latter with collusive grounds for divorce, the motives of the offending spouse will not deprive the other of his right to relief. There is not a scintilla of evidence in the present record from which an inference of collusion might justifiably be drawn. Indeed, the remarks of the trial court indicate that no such factual conclusion had been drawn. Plaintiff therefore should have been granted a divorce in accordance with his prayer.

Parenthetically, it might be noted that if the trial court's interpretation of section 130 were to be accepted, plaintiff would never be able to free himself from this marriage not-

withstanding the fact that it had been so effectively destroyed by his wife's wilful misconduct. For example, if plaintiff had chosen not to proceed on the basis of defendant's acts of cruelty, but had waited until her desertion had continued for one year, he still could not have obtained relief under the court's view because the corroborative evidence would have remained the same and defendant's desire to terminate the marriage would still have been the announced reason for her absence.

The judgment is reversed with the direction that appellant be granted an interlocutory judgment of divorce.

Roth, P. J., and Fleming, J., concurred.