[L.A. No. 29907. In Bank. Feb. 23, 1972.]

In re the Marriage of NORMA and PAUL ATTLEY McKIM.
NORMA McKIM, Appellant, v.
PAUL ATTLEY McKIM, Respondent.

674

## COUNSEL

Saul & Wiener and Edwin S. Saul for Appellant.

No appearance for Respondent.

John D. Maharg, County Counsel, and Douglas C. Miller, Deputy County Counsel, as Amici Curiae.

## OPINION

**WRIGHT, C. J.**—Petitioner wife appeals from a judgment denying dissolution of a marriage. The appeal presents questions of first impression in this court as to procedure under the Family Law Act (Civ. Code, div. 4, pt. 5, § 4000 et seq., operative Jan. 1, 1970)[1] and the Family Law Rules of the Judicial Council (Cal. Rules of Court, rule 1201 et seq., effective Jan. 1, 1970). At the hearing of the uncontested dissolution proceeding the wife was not personally present. The only evidence presented by her counsel was the testimony of her husband. The trial court refused to dissolve the marriage because it was of the opinion that this procedure was legally impermissible.

On this appeal the wife contends that the trial court was required to dissolve the marriage because uncontradicted testimony of the husband established irreconcilable differences. The husband in propria persona has acknowledged receipt of a copy of his wife's opening brief and has stated that he does not wish to reply. The Los Angeles County Counsel appears as amicus curiae in support of the trial court's judgment. For the reasons hereafter stated we reject the wife's contention but reverse for further proceedings.

The parties were married in July 1968 and separated in September 1968. There were no children of the marriage. On October 21, 1968, the wife filed her verified complaint for divorce on the ground of extreme cruelty. On November 11, 1968, the parties stipulated that the wife "may proceed to procure a default divorce." The stipulation provided for a division of property, the wife waived alimony, and the husband agreed to pay all community obligations. The husband's default was entered in December 1968. The matter then went off calendar.

---

[1]Unless otherwise stated all section references herein are to the Civil Code.

On January 1, 1970, by operation of statute (Stats. 1969, ch. 1608, § 37, p. 3351, as amended by Stats. 1969, ch. 1609, § 29, p. 3360) and rule (Cal. Rules of Court, rule 1261) the pending action for divorce became a proceeding under the Family Law Act for dissolution of marriage on the ground of irreconcilable differences.

On February 17, 1970, the proceeding came on for hearing. The wife was not present, and her counsel did not explain her absence[2] or mention producing her testimony by affidavit or other means. The husband did not appear as a party but attended the hearing under subpoena as a witness for the wife. Under examination by the wife's counsel the husband testified as to the parties' irreconcilable differences. The whole of his testimony in this regard is quoted in the margin.[3] The trial court indicated that in its opinion the proceeding could not go forward on the basis of the husband's testimony because he had not filed a pleading. The court stated that it proposed to take the matter under submission. It permitted the wife's counsel to complete his presentation. He introduced the husband's testimony that the parties had entered into the stipulation of November 11, 1968, and that its provisions as to property had been performed. The stipulation was filed in the proceeding.

The trial court's minute order of February 17, 1970, states that "petitioner having failed to appear matter is placed off calendar." On May 8, 1970, the judgment was filed and entered. It states that "petitioner Norma McKim having failed to appear before the Court and testify, and . . . it further appearing that the petitioner does not intend to appear before the Court and testify; Now THEREFORE . . . the complaint for divorce . . . now deemed a Petition for Dissolution of Marriage . . . is hereby denied."

It thus appears from the record that the trial court's judgment denying dissolution was based on its determinations that the wife was required to

---

[2]In this court the only explanation of the wife's failure to attend the hearing and testify is the statement of her counsel in his brief that "she had already left the state to resume a new life elsewhere."

[3]"Q. Mr. McKim, you are the respondent in this case; is that correct? A. Right.

"Q. At the time the petition in this matter was filed, was it your belief that there were irreconcilable differences between you and your wife? A. Right.

"Q. Since that time, have you and your wife attempted to resolve these differences? A. Yes.

"Q. In fact, you reconciled for a period of time; is that correct? A. Yes.

"Q. That reconciliation did not work out? A. No.

"Q. Is it your opinion that at the present time there are irreconcilable differences? A. Right.

"Q. Is it your opinion that any further waiting period or conciliation would assist in saving this marriage? A. No.

"Q. As far as you are concerned, there is no longer a marriage? A. No."

appear personally at the hearing of the proceeding for dissolution of marriage and that the grounds of dissolution could not be proved by the testimony of her husband whose default had been entered. ■ Neither the Family Law Act nor the Family Law Rules adopted by the Judicial Council pursuant to the act[4] expressly require the personal appearance and testimony of the petitioner or expressly forbid proof of irreconcilable differences by testimony of a respondent. Therefore, we look to the overall purposes of the act in order to determine whether the requirements imposed by the trial court were proper. (See Cal. Rules of Court, rule 1249: "In the exercise of the [trial] court's jurisdiction pursuant to the Family Law Act, if the course of proceeding is not specifically indicated by statute or these rules, any suitable process or mode of proceeding may be adopted by the court which appears conformable to the spirit of the Family Law Act and these rules.")

The intent and purposes of the act's provisions as to dissolution of marriage are described in the Report of 1969 Divorce Reform Legislation of the Assembly Committee on Judiciary. (4 Assem. J. (1969) p. 8054, hereafter cited as Assembly Report.) ■ The basic substantive change in the law is the elimination of fault or guilt as grounds for granting or denying divorce[5] and for refusing alimony and making unequal division of community property.[6] Instead of grounds for divorce based on fault the Legislature sought to provide "a basis for dissolution which is descriptive

---

[4]The act states that "Notwithstanding any other provision of law, the Judicial Council may provide by rule for the practice and procedure in proceedings under this part [the Family Law Act]." (Civ. Code, § 4001.) The Judicial Council has independent authority pursuant to section 6 of article VI of the state Constitution to ". . . adopt rules of court administration, practice and procedure, not inconsistent with statute." The practical effect of section 4001, therefore, is to remove any restraints of statutory consistency on the Judicial Council's rules of practice and procedure under the Family Law Act. (See *In re Dover* (1971) 15 Cal.App.3d 675, 678, fn. 3 [96 Cal.Rptr. 528]; 1 Witkin, Cal. Procedure (2d ed. 1970) Courts, § 260.)

The Judicial Council's authority to change statutory rules of procedure in this area is underscored by the provision of rule 1206, California Rules of Court, that "To the extent that these rules conflict with . . . [provisions of law applicable to civil actions generally], these rules shall prevail." The Family Law Rules of the California Rules of Court supersede contrary statutes because the rules were adopted pursuant to and are consistent with specific constitutional and statutory authorizations having this effect. (See 1 Witkin, Cal. Procedure (2d ed. 1970) Courts, § 120; *In re Dover, supra.*)

[5]The Legislature repealed former section 92 et seq. of the Civil Code, which provided that divorces might be granted for adultery, extreme cruelty, wilful desertion, wilful neglect, habitual intemperance, and conviction of felony.

It also repealed former section 111 et seq., which provided that divorce must be denied upon a showing of connivance, collusion, condonation, recrimination, or limitation and lapse of time.

[6]See Attorney's Guide to Family Law Practice (Cont.Ed.Bar 1970) §§ 3.3, 4.3.

of the actual reasons underlying marital breakdown." (Assembly Report, *supra,* p. 8057.) The grounds of dissolution which the act substitutes for the traditional concept of fault are "Irreconcilable differences, which have caused the irremediable breakdown of the marriage." (Civ. Code, § 4506.) "Irreconcilable differences are those grounds which are determined by the court to be substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved." (Civ. Code, § 4507.)

By eliminating faults and wrongs as substantive grounds for dissolution and "By requiring the consideration of the marriage as a whole and making the possibility of reconciliation the important issue, the intent is to induce a conciliatory and uncharged atmosphere which will facilitate resolution of the other issues and perhaps effect a reconciliation." (Assembly Report, *supra,* p. 8058.) Statutory procedural changes implement this intent. The petition for dissolution is not adversary in form but is entitled, "In re the marriage of . . . and. . . ." (Civ. Code, § 4503.) "Irreconcilable differences" shall be pleaded generally. (Civ. Code, § 4506.) "In any pleadings or proceedings for legal separation or dissolution of marriage under this part, including depositions and discovery proceedings, evidence of specific acts of misconduct shall be improper and inadmissible, except where child custody is in issue and such evidence is relevant to that issue, or at the hearing where it is determined by the court to be necessary to establish the existence of irreconcilable differences." (Civ. Code, § 4509.)

Although the Legislature intended that as far as possible dissolution proceedings should be nonadversary, eliminating acrimony, it did not intend that findings of the existence of irreconcilable differences be made perfunctorily. It rejected a proposal under which the court could have been required to dissolve a marriage on a showing that the parties had taken certain procedural steps and that a certain period of time had passed. Instead the Family Law Act contemplates that "The court should sit as an overseeing participant to do its utmost to effect a healing of the marital wounds." (Assembly Report, *supra,* p. 8058.) The court cannot perform this contemplated function without evidence as to the condition of the marriage. Therefore, section 4511 provides that "No decree of dissolution can be granted upon the default of one of the parties . . . but the court must . . . require proof of the grounds alleged, and such proof, if not taken before the court, shall be by affidavit."

Section 4511 is derived from the provision of former section 130 that "No divorce can be granted upon the default of the defendant . . . but the court must . . . require proof of the facts alleged, and such proof, if not taken before the Court, must be upon written questions and answers."

■ A principal purpose of the rule stated in former section 130 was to prevent the parties to a marriage from obtaining a divorce by collusion. (*Baker* v. *Baker* (1859) 13 Cal. 87, 94; *Woodworth* v. *Woodworth* (1966) 242 Cal.App.2d 301, 305 [51 Cal.Rptr. 410].) Former section 114 defined collusion as "an agreement between husband and wife that one of them shall commit, or appear to have committed, or to be represented in court as having committed, acts constituting a cause of divorce, for the purpose of enabling the other to obtain a divorce." The Family Law Act contains no express reference to collusion. The county counsel, however, contends that the policy against collusive dissolutions of marriage not only continues to underlie the act but should impel this court to promulgate procedural rules, applicable to all proceedings for dissolution on the ground of irreconcilable differences, which will amplify and clarify the requirements of section 4511. In opposition to this contention the wife urges that collusion precluding the granting of a judgment of dissolution cannot exist under the Family Law Act because any agreement by the spouses that their marriage should be dissolved establishes their irreconcilable differences and the breakdown of their marriage.

We cannot accept the wife's understanding of the purposes and operation of the act. We do not suggest that the parties to this proceeding acted in collusion. ■ Under the wife's theory, however, it would be proper for the parties to agree that one of them would present false evidence that their differences were irreconcilable and their marriage had broken down irremediably. The obtaining of a decree of dissolution by such an agreement would be a fraud on the court. (See Note (1936) 36 Colum.L. Rev. 1121, fn. 8.) The Assembly Report condemned similar sham procedures which had developed under the former divorce law. (Assembly Report, *supra,* p. 8057.) ■ Moreover, a traditional justification of the collusion doctrine with its implementing procedural rules is the state's interest in preserving the institution of marriage. "The public is interested in the marriage relation and the maintenance of its integrity, as it is the foundation of the social system, and the law wisely requires proof of the facts alleged as the ground for its dissolution." (*Baker* v. *Baker, supra,* 13 Cal. at p. 94.) ■ Under the Family Law Act the court, not the parties, must decide whether the evidence adduced supports findings that irreconcilable differences do exist and that the marriage has broken down irremediably and should be dissolved.[7]

We now return to the county counsel's contention that we should pro-

---

[7]In this regard section 4508 requires that the court consider not only the evidence adduced at the hearing but also the contents of the confidential questionnaire (the form adopted by rule 1284).

mulgate rules clarifying or supplementing section 4511. He urges that former section 130 required that the plaintiff appear personally at the hearing on an uncontested divorce complaint and that a similar requirement is carried into section 4511. The assumption that the former statute required such personal appearance is common (see Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar 1970) § 2.24) but mistaken. ■ The former law did not forbid the granting of a divorce to an absent plaintiff. Trial judges, however, as a matter of policy normally required that the plaintiff appear personally and testify in court because they were of the opinion that, except in unusual cases where the plaintiff was unavailable, "the court has a right to scrutinize the plaintiff on the stand, and weigh the credibility of the testimony, and to see that in the absence of cross-examination in a default case, there is justifiable cause to grant a divorce." (*Divorce by Deposition Frowned Upon* (1939) 14 State Bar J. 140, 141.) ■ The policies on which the former usual divorce practice rested apply similarly to proceedings for dissolution. ■ Thus when the petitioner does not appear and testify personally at the hearing on the petition for dissolution, and particularly when as in this case there is no attempt to explain the petitioner's absence and no affidavit has been filed, the trial court in its sound discretion may well remain unconvinced by the evidence that the parties' differences are truly irreconcilable and have led to the irremediable breakdown of their marriage.

The trial court here, however, did not deny a dissolution because it was not persuaded that the marriage had broken down irremediably. Instead it failed to reach that crucial question of fact because the petitioning wife did not appear personally and because it was of the opinion that the testimony of the defaulting husband as a matter of law was not competent evidence on the issue of irreconcilable differences. The county counsel urges that we should hold that the testimony of a defaulting respondent is inadmissible on that issue. ■ Nothing in the Family Law Act or the Family Law Rules suggests that the default of a party affects his competence as a witness or the admissibility of his testimony as to any issue of which he has knowledge. Neither the act nor the rules purport to change the law of evidence in this regard or to specify the source from which relevant proof must come.

We note that the procedure on default in dissolution cases is now governed in the following terms by rule 1237, California Rules of Court: ". . . the clerk shall enter the respondent's default upon proper application of the petitioner and thereafter the petitioner may apply to the court for the relief sought in the petition. The court shall require proof to be made of the facts stated in the petition and may enter its judgment accord-

ingly." These provisions replace similar provisions in Code of Civil Procedure section 585 governing the procedure on default in civil cases generally. Rule 1237 implements specifically the policy expressed in section 4511 that prohibits the granting of a judgment of dissolution upon a default alone. In this respect section 4511 (and former § 130, from which it is derived) simply restated explicitly for dissolution proceedings the same rule stated for civil actions generally in subdivisions 2 and 3 of Code of Civil Procedure section 585, namely, that there must be a hearing at which proof is presented to the court to justify the relief sought. Although rule 1237 continues the same requirements regarding the necessity for presenting proof to the court at the default hearing, the rule is silent as to the specific type or source of proof to be used. We find nothing in this rule, however, that suggests an intention to depart from the former practice regarding the source of proof required in dissolution cases.

We note also that subdivision 4 of Code of Civil Procedure section 585 since 1961 (Stats. 1961, ch. 393, p. 1445) has specifically excepted "cases which involve the dissolution or annulment of marriage or separate maintenance or the custody of children . . ." from its authorization for ". . . the court in its discretion . . . [to] permit the use of affidavits, in lieu of personal testimony, as to all or any part of the evidence or proof required or permitted to be offered, received, or heard in such [default] cases." This provision suggested a restraint upon the court's discretion to permit the use of affidavits in dissolution proceedings and we find nothing in rule 1237 suggesting an abrogation of this restrictive policy. To reconcile this restrictive policy with the apparently contradictory language of section 4511 requires us to follow the former practice as suggested above insofar as is practicable. ■ Accordingly, we hold that a trial court must require the petitioner to appear personally and testify at the hearing unless, in exceptional circumstances where an explanation of petitioner's absence is shown to the satisfaction of the court, the court in its sound discretion permits the requisite proof to be made by affidavit as recognized by section 4511. ■ We further hold that in exceptional cases where the court deems it warranted, it may receive in lieu of petitioner's testimony or affidavit the testimony of other competent witnesses including the respondent. Such testimony, of course, must be sufficient to enable the court to make the required findings as hereinabove set forth.

When this case was tried petitioner-wife and the trial court did not have the guidance of any statute, Judicial Council rule, or appellate decision as to the propriety of basing the denial of a dissolution of marriage on the wife's failure to testify in person or by affidavit. Unnecessary hardship would result from denying relief to the wife because she sought to

establish grounds for dissolution solely by the testimony of her husband and was unaware that the trial court in its discretion could require that she testify in person or, if exceptional circumstances were shown, by affidavit. (Cf. *In re Henderson* (1964) 61 Cal.2d 541, 543 [39 Cal.Rptr. 373, 393 P.2d 685].)

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion. In the interests of justice (Cal. Rules of Court, rule 26(a)) it is ordered that each party shall bear his or her own costs on this appeal.

McComb, J., Peters, J., Burke, J., and Sullivan, J., concurred.

**MOSK, J.**—I dissent.

The California Legislature took a giant leap forward in the field of domestic relations with adoption of the Family Law Act, operative as of January 1, 1970. Regrettably my colleagues in the majority take a step backward as they judicially legislate potentially burdensome requirements not contained in the statute.

There is not a scintilla of authority contained either explicitly or implicitly within the Family Law Act for the fiat that, in the absence of "exceptional circumstances," the trial courts of this state "must require the *petitioner* to appear personally and testify at the hearing." (Italics added; *ante*, p. 682.) Indeed, reflection upon the inexorable beneficent trend of the law in the divorce field leads to a contrary conclusion.

Traditionally, divorce could be granted to an aggrieved marital partner only upon a showing of the exclusive fault of the other partner. Indeed, prior to 1952, if both husband and wife established that the other committed egregious acts proscribed by the Civil Code, neither could obtain a legal termination of the marriage. To prevail, an applicant had to be "without reproach." (*Conant* v. *Conant* (1858) 10 Cal. 249, 258.) The incongruous compulsion upon two offending parties to retain their mutually intolerable marital status was finally eliminated in *De Burgh* v. *De Burgh* (1952) 39 Cal.2d 858 [250 P.2d 598], which wisely recognized that the considerations justifying a divorce "when one spouse has been guilty of misconduct are often doubly present when both spouses have been guilty." (*Id.* at p. 864.) With that decision the defense of recrimination, for all practical purposes, became moribund, and a faint ray of rationality illumined the field of domestic relations.

However, the concept of fault as the essential element in divorce actions lingered on, even in cases involving no issue of child custody and cases in

which the defendant defaulted and thus impliedly admitted the allegations of the complaint. Every day, in every superior court in the state, the same melancholy charade was played: the "innocent" spouse, generally the wife, would take the stand and, to the accompanying cacophony of sobbing and nose-blowing, testify under the deft guidance of an attorney to the spousal conduct that she deemed "cruel."

Universal disenchantment with the demeaning nature of this command performance, and with the rule that demonstrable fault is necessary to terminate the marriage relationship, led to extensive legislative studies and ultimately to adoption of the Family Law Act.

The foregoing is the background against which are silhouetted the provisions of the current law permitting dissolution of marriage when the trial court determines there are "irreconcilable differences, which have caused the irremediable breakdown of the marriage." (Civ. Code, § 4506.) Irreconcilable differences are broadly defined as those which the court determines "to be substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved." (Civ. Code, § 4507.) Seldom have code provisions given trial courts less definitive direction; this tolerance, I suggest, was deliberate and is desirable in a field as volatile as proceedings for termination of the marital status.

At the outset of their discussion the majority concede that "Neither the Family Law Act nor the Family Law Rules adopted by the Judicial Council pursuant to the act expressly require the personal appearance and testimony of the petitioner or expressly forbid proof of irreconcilable differences by testimony of a respondent." (Fn. omitted; *ante,* p. 678.) Despite this concession, however, the majority proceed to legislate the precise requirement omitted by the Legislature and the Judicial Council.

The majority also concede that the "former law did not forbid the granting of a divorce to an absent plaintiff." (*Ante,* p. 681.) Then, inexplicably, under the present advanced law they hold the trial courts "*must* require the petitioner to appear personally and testify at the hearing" except under undefined "exceptional circumstances." (Italics added; *ante,* p. 682.) This is exalting form over substance. It results in retrogression, and frustrates the empathetic approach to domestic relations which the Legislature anticipated in the new Family Law Act.

Finally, the majority concede that "Nothing in the Family Law Act or the Family Law Rules suggests that the default of a party affects his competence as a witness or the admissibility of his testimony as to any issue of which he has knowledge." (*Ante,* p. 681.) Yet the majority hold that the testimony of such a witness is admissible in lieu of the petitioner's

testimony or affidavit only in undefined "exceptional cases." (*Ante*, p. 682.) Again, there is no legislative authority for this restriction.

The fundamental error of the majority is in looking backward to the old divorce practice. Because trial judges previously *as a matter of policy* (*ante*, p. 681) required the plaintiff to appear personally and testify in court, the majority can see nothing in the new law that "suggests an intention to depart from the former practice" (*ante*, p. 682). This, of course, completely disregards the above-described innovative spirit and intent of the Family Law Act, as well as the precise language of new Civil Code section 4511, which significantly departs from the previous law (§ 130) in providing that "No decree of dissolution can be granted upon the default of one of the parties . . . but the court must . . . require proof of the grounds alleged, and such proof, *if not taken before the court, shall be by affidavit.*" (Italics added.) What the Legislature clearly intended was that the trial court shall hold a hearing, but that proof of the parties' irreconcilable differences, if not presented before the court by in-person testimony, *shall be by affidavit.* There is no reference to unusual circumstances or to compulsory attendance by the petitioning party. The specific provision for permissible proof by affidavit indicates just the contrary.

As I see it, there are six sets of circumstances most likely to occur in the context of dissolution proceedings where there is no issue of child custody. Assume for ease of consideration that in each of the following factual illustrations the petitioner is the wife and the respondent is the husband who has defaulted.

1. The wife appears and testifies. The court is satisfied from her testimony that there are irreconcilable differences and that the marriage should be dissolved. No problem appears and the decree should be granted.

2. The wife appears and testifies. The court is not satisfied from her testimony that there are irreconcilable differences. The court may then require further testimony from the wife, from the defaulting husband after issuing a subpoena for his appearance, or from other witnesses, in whatever manner it deems appropriate.

3. The wife does not appear at the hearing. The defaulting husband appears and testifies. The court is satisfied from his testimony that there are irreconcilable differences. In such circumstances the court may properly grant the decree.

4. The wife does not appear. The defaulting husband appears and testifies. The court is not satisfied from his testimony that there are irreconcilable differences. The court reaches that conclusion, however, not

because of a predetermined policy of arbitrarily denying a decree in the absence of the petitioner, but solely because the proof in this instance is inadequate. The court may then require further evidence from the wife or from other witnesses.

5. Neither the wife nor husband appears. Other competent percipient witnesses appear and testify, e.g., adult children, parents, close relatives. If the court is satisfied from the nature and extent of the testimony that there are indeed irreconcilable differences, the court may grant the decree. If the court is not satisfied, it may require further evidence.

6. Neither the wife nor husband appears personally at the hearing, and the matter is submitted solely on affidavits. In that event the court should require some additional personal testimony in order to reach a considered conclusion that a dissolution of the marriage is proper. On the other hand, if the trial court makes a finding of unusual circumstances—e.g., the wife is confined to a hospital, the husband is in custody—it may waive proof ordinarily "taken before the court" and grant a decree of dissolution predicated on adequate affidavits. (Civ. Code, § 4511.)

As indicated in all of the foregoing six hypothetical circumstances, I would permit the trial court to determine the type and quality of testimony required, with the only caveat being that consideration must be given to each case individually, not circumscribed by predetermined policy. If satisfied by the presentation, regardless of the statutorily permissible manner in which it is made, the trial judge should be permitted to make a finding that irreconcilable differences prevail and to render an interlocutory decree determining that the marriage is dissolved. It is not appropriate for this court to encompass trial judges in procedural straitjackets not contemplated by the Legislature.[1]

I would reverse the judgment and direct the trial court to determine the merits of the petition on the evidence already submitted.

Tobriner, J., concurred.

---

[1]Rule 1249, adopted by the Judicial Council, provides: "In the exercise of the court's jurisdiction pursuant to the Family Law Act, if the course of proceeding is not specifically indicated by statute or these rules, *any suitable process or mode of proceeding may be adopted by the court* which appears conformable to the spirit of the Family Law Act and these rules." (Italics added.) It is clear from reading preceding and following rules that the Judicial Council was speaking of trial courts, not the Supreme Court.