[Civ. No. 39361. Second Dist., Div. Two. Aug. 24, 1972.]

In re the Marriage of KENNETH J. and MARIAN E. COSGROVE.
KENNETH J. COSGROVE, Respondent, v.
MARIAN E. COSGROVE, Appellant.

## Counsel

Young & Young and Walter H. Young for Appellant.

Ross & Saunders and E. Loyd Saunders for Respondent.

## Opinion

**HERNDON, J.**—This appeal is taken by the wife from an interlocutory judgment of dissolution of marriage. The husband, respondent herein, petitioned for a dissolution of the marriage pursuant to Civil Code section 4506, subdivision (1), and by her response to the petition the wife sought a legal separation.

The parties, both of whom are medical doctors, were married on April 19, 1941. They separated 28½ years later on October 24, 1969. There are five children of the marriage, two of whom were adults at the time of separation. At the time of trial in 1971, the ages of Michelle, Michael and

William, the other three children, were 20, 18 and 13, respectively. Michelle has since attained her majority.

The community property of the parties was valued at a total of $430,000. The major items of the community property and their respective values were as follows: Jointly owned corporate stocks, $363,000; a residence in Palm Springs, $52,000; cash, $13,000; and two automobiles, $1,000 each. The wife owned separate property consisting of corporate stocks valued at a total of $203,000.[1]

The trial court undertook to divide the community property into equal shares and awarded each party items of a total value of $215,000. In addition to her separate property, the wife was awarded the Palm Springs residence and its furnishings, corporate stocks valued at $155,000, and one-half of the other personal property. The total value of the separate and community property awarded to the wife was $418,500.

To equalize the division of the community property and to offset the value of the residence, the husband was awarded corporate stocks valued at $207,500 in addition to his share of the other personal property. The total value of the property awarded to the husband was $215,000.

The record indicates that for the year 1969, the total income from all of the jointly owned securities was approximately $29,000. The income from the wife's separate property for the same year was approximately $8,500.

For several years the husband had been employed by a medical clinic. At the time of trial his annual salary was $26,300. Computed on the basis of the proportionate division of the jointly owned securities and the 1969 income derived therefrom, the husband's prospective annual income from that source would be approximately $15,500, or a total prospective annual income of $41,800.

The wife's prospective annual income from the jointly owned securities awarded to her, computed on the same basis, would be approximately $13,500. This, added to the $8,500 of estimated annual income from her separate securities, would give her a total prospective annual income of approximately $22,000. The wife testified that the living expenses for herself and the three children for the year 1970 amounted to $21,464.88.

During the marriage the parties created trusts for the benefit of each of their children. At the time of trial the wife was the trustee of these

---

[1]The indicated values of the properties referred to in this opinion are approximate and, in the interest of simplicity, are stated in rounded figures.

trusts, the assets of which consisted of stocks, bonds and savings accounts. The value of the assets in the trusts for the three minor children and the income therefrom for the year 1969 were as follows:

Michelle's Trust . . . . . . . . . . . $76,374; Income $2,935

Michael's Trust . . . . . . . . . . . $76,374; Income $2,963

William's Trust . . . . . . . . . . . . $75,365; Income $2,685.

There was a conflict in the evidence as to the source of the assets which constituted the corpus of each of these trusts. The wife testified that to a large extent these assets were acquired with gifts from her parents, the maternal grandparents of the children. The husband testified that the assets of the trusts were purchased with funds derived from a variety of sources including gifts from the grandparents and commingled community assets.

The findings of the trial court with respect to child support and spousal support were as follows: "That the Petitioner is able to pay and the Respondent is entitled to receive as child support the sum of $100.00 per month for each child, or a total of $300.00 per month, payable one-half on the 1st and one-half on the 15th of each month commencing May 1, 1971, and continuing until said child attains majority, marries or is otherwise emancipated. The Court finds and this award for child support takes into consideration the separate estate of each child, which estate may be used to pay expenses of education including room and board, tuition, books and travel expenses. That the children have in their own name and in the name of the Respondent either as trustee or custodian for their benefit the following amount of assets for the following children: 1. MICHELLE $76,374.00; 2. MICHAEL $76,374.00; 3. WILLIAM $75,365.00. Each of the parties is capable of gainful employment and will have an estate to supply adequate support. Therefore, no spousal support shall be awarded to either party."

Appellant contends that: (1) the Family Law Act is unconstitutional; (2) the evidence does not support the trial court's finding that the proceeds of certain gifts of stock received from her parents were commingled with the community property and used for community purposes with her knowledge and consent and without any agreement for reimbursement; (3) the trial court abused its discretion in refusing to award spousal support and in awarding inadequate child support; (4) the trial court erred in failing to determine the respective income tax liabilities of the parties for the years 1970 and 1971 and in failing to make suitable provisions for the payment thereof.

## Constitutionality Of The Family Law Act

In attacking the Family Law Act appellant has not articulated any specific basis for her assertion that it conflicts with constitutional law. No specific constitutional provision is invoked. The argument is made that "absolutely no ground rules or guidelines are laid down in the statute as to what constitutes irreconcilable differences" with the result that the marriage contract may be dissolved "on the whim and caprice of the particular judge."

Appellant argues further that "what has occurred under the Family Law Act is that the Legislature has delegated the function of dissolving marriages either to any litigant who wants to have his or her marriage dissolved and to the absolute discretion of the courts to either grant or deny the dissolution of a marriage without any guidelines whatsoever. This is clearly an unlawful delegation of the power of the Legislature.".

We think no extended discussion is necessary to demonstrate the fallacy of these arguments. The guidelines for the proof and determination of the existence of "irreconcilable differences" are no more lacking in the present law than were the guidelines for the determination of fault under the former law. The rights of the responding party who elects to oppose the dissolution of the marriage are fully protected. The procedures prescribed for exhausting all reasonable efforts to save the marriage by reconciliation demonstrate the continuing concern of the law for the preservation of the marriage wherever possible. The continuing policy to avoid collusive dissolutions and to insure that dissolutions will be granted only upon adequate proof that the causes of the marital failure are in truth irremediable is emphasized by the recent decision of *In re Marriage of McKim,* 6 Cal.3d 673 [100 Cal.Rptr. 140, 493 P.2d 868].

The new Family Law Act was enacted after a long and careful study of the social and legal procedures affecting divorce by a Governor's commission and by legislative committees. As early as 1952, the Supreme Court recognized the public policy in favor of dissolving defunct marriages.

"Since the family is the core of our society, the law seeks to foster and preserve marriage. But when a marriage has failed and the family has ceased to be a unit, the purposes of family life are no longer served and divorce will be permitted. '[P]ublic policy does not discourage divorce where the relations between husband and wife are such that the legitimate objects of matrimony have been utterly destroyed.' [Citations.]" (*De Burgh v. De Burgh,* 39 Cal.2d 858, 864 [250 P.2d 598].)

In the case at bench, appellant did not contend in the trial court that

any available reconciliation procedure had not been utilized. She did not deny the existence of irreconcilable differences but by necessary implication affirmed their existence by her response to the petition wherein she sought a decree of legal separation.

### Appellant's Claim Of Right To Reimbursement For Separate Property Used For Community Purposes

The evidence concerning the extent, the nature and purpose and the disposition of the numerous substantial gifts, which appellant's parents made over a period of many years for the purpose of benefitting their daughter, their son-in-law and their grandchildren, is hopelessly confusing and conflicting.

The husband testified that when gifts of securities were received he immediately had them placed in the names of himself and his wife jointly and that the dividends were deposited either in their joint bank account and/or in one of their three savings and loan accounts. He testified that his salary and dividends from the jointly owned securities also were deposited in one or the other of these accounts; that the common bank account was drawn upon to purchase securities and to pay all the living expenses of the family; and that he and his wife had no agreement that he would reimburse her for any gifts or proceeds of gifts which were thus used and commingled with the community property.

Appellant's claim that she is entitled to reimbursement is predicated upon (1) her testimony that all of the dividends from her separate property prior to 1967 were deposited in the joint accounts; (2) computations by her attorney indicating that during the period in question dividends from securities admittedly her separate property would have amounted to approximately $65,000; and (3) evidence that the husband's salary and dividends from jointly owned securities were more than sufficient to pay all family living expenses.

The trial court's findings upon the issues of fact thus tendered were as follows: "That a confidential relationship existed between the Petitioner and the Respondent. There was no breach of Petitioner's fiduciary duties and there was no breach of the confidential relationship. There was no agreement whereby the Petitioner was to reimburse the Respondent for her separate property which was contributed to the community with the Respondent's knowledge and consent and without objection of the Respondent over many years. Therefore, the Respondent is not entitled to any reimbursement."

The sufficiency of the evidence to support the trial court's findings is not open to serious question. The circumstance that appellant had her own separate bank account and maintained the separate status of such a substantial block of securities tends to support the findings. The law applicable to this factual situation was stated as follows in *See* v. *See*, 64 Cal.2d 778 at pages 785-786 [51 Cal.Rptr. 888, 415 P.2d 776]: "Nor can we approve the recognition of an exception, a right to reimbursement of separate funds expended for community purposes at a time when a community bank account is exhausted. (*Kenney* v. *Kenney*, 128 Cal.App.2d 128, 136 [274 P.2d 951]; *Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116, 126 [264 P.2d 626]; *Hill* v. *Hill*, 82 Cal.App.2d 682, 698 [187 P.2d 28]; cf. *Mears* v. *Mears, supra,* 180 Cal.App.2d 484, 508 [4 Cal.Rptr. 618].) Although this exception was restricted to recovery from the same community account when replenished, there is no statutory basis for it, and the court that first declared it cited no authority to support it. Such an exception conflicts with the long-standing rule that a wife who uses her separate funds in payment of family expenses without agreement regarding repayment cannot require her husband to reimburse her. (*Ives* v. *Connacher*, 162 Cal. 174, 177 [121 P. 394]; *Blackburn* v. *Blackburn*, 160 Cal.App.2d 301, 304 [324 P.2d 971]; *Thomson* v. *Thomson*, 81 Cal.App. 678 [254 P. 644]; cf. *Haseltine* v. *Haseltine*, 203 Cal.App.2d 48 [21 Cal.Rptr. 238].) Nor is a wife required to reimburse her husband in the converse situation, particularly since the husband has the control and management of community expenses and resources. ▉ The basic rule is that the party who uses his separate property for community purposes is entitled to reimbursement from the community or separate property of the other only if there is an agreement between the parties to that effect. To the extent that they conflict with this rule *Mears* v. *Mears, supra,* 180 Cal.App.2d 484; *Kenney* v. *Kenney, supra,* 128 Cal.App.2d 128; *Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116; and *Hill* v. *Hill,* 82 Cal.App.2d 682 [187 P.2d 28], are disapproved."

As stated in *Weinberg* v. *Weinberg*, 67 Cal.2d 557, 570 [63 Cal.Rptr. 13, 432 P.2d 709]: " '. . . The basic rule is that the party who uses his separate property for community purposes is entitled to reimbursement from the community or separate property of the other only if there is an agreement between the parties to that effect.' "

### Child And Spousal Support

It appears from the testimony of appellant and from the quoted finding of the court that the primary purpose of creating the trusts for the children was to provide insurance that there would be an available source of funds from which to pay the expenses of their *education*. Although there is no

finding to this effect, it is an almost inescapable conclusion to be derived from the inherent logic of the situation that it was the expectation and intent of parents and grandparents alike that any balance of the estate of each child remaining after the expenses of his education had been paid would be delivered to him upon his attaining his majority.

In *Hills* v. *Hills*, 245 Cal.App.2d 578, 580 [54 Cal.Rptr. 89], the following from *In re Carboni*, 46 Cal.App.2d 605, 613 [116 P.2d 453], is quoted with approval: " 'The law is well-settled that the primary duty to support a minor rests upon his parents, and that the estate of the minor can only be resorted to where the parents are unable to fulfill the obligation in whole or in part. [Citing cases.]' "

In 37 California Jurisprudence 2d, Parent and Child, section 22, pages 168-169, the law is stated as follows: "Parental liability for child support is not affected by the fact that the child is possessed of property and has an estate of his own. Parents are primarily liable for the support of their children, and the children's estates may not be resorted to for that purpose so long as the parents are able to perform the duty of support and maintenance. Thus, ordinarily a mother owes her children the duty of nurturing and caring for them without compensation from their estates. But if a minor having a father living has property, the income from which is sufficient for his support, maintenance, and education in a manner more expensive than his father can reasonably afford, the expenses of the minor's support may be defrayed out of the income from his own property, in whole or in part, as may be judged reasonable and directed by a court. And the proper court may direct an allowance to be made to the parent of a child, out of its property, for its past or future support and education, whenever such direction is for its benefit."

Applying the law to the facts of this case, we conclude that the award of $100 per month for the support of each minor child was not an adequate provision reasonably to be required of a father with a prospective income exceeding $40,000 per annum and assets of a value well in excess of $200,000.

With respect to spousal support, appellant has cited *In re Marriage of Rosan*, 24 Cal.App.3d 885 [101 Cal.Rptr. 295], wherein it was held that in view of the circumstances of the parties to that case, the trial court had abused its discretion in making an order which awarded the wife inadequate support and which unreasonably provided for a termination of all support at the end of three years.

In *Rosan* the duration of the marriage was 17 years, the husband's earn-

ings, after taxes, had averaged about $25,000 per year. The community assets, valued at nearly $54,000, were divided equally. The appellate court described the trial court's support order as follows at page 891: "The decree orders Husband to pay to Wife $150 per month for the support of the 15-year-old child placed in her custody. For support of Wife, Husband was ordered to pay $400 per month for one year commencing January 1, 1971, $300 per month for the succeeding year and $200 per month for the next year. Thereupon it was ordered that spousal support terminate. Wife contends that the award is grossly inadequate in amount and that the trial court further abused its discretion in providing for automatic termination of all spousal support at the end of three years. Although not all of Wife's arguments are well founded, we have concluded that these contentions have merit and that the trial court abused its discretion in the award of spousal support in several respects."

The *Rosan* court analyzes the factors which govern the exercise of discretion in awarding spousal support under the Family Law Act as follows at pages 892-893: "We consider first the award of $400 per month for calendar year 1971. At the outset, we deem it appropriate to comment on the changes wrought by enactment of The Family Law Act (Stats. 1969, ch. 1608, operative January 1, 1970). Under the preexisting law an award of spousal support rested in the judicial discretion of the trial court upon consideration of the circumstances of the parties, but one of the circumstances to be considered was the comparative marital fault of the parties. (See former Civ. Code, § 139; *Nunes* v. *Nunes*, 62 Cal.2d 33, 38 [41 Cal.Rptr. 5, 396 P.2d 37].) There was involved 'a concept of granting support to the "innocent" or against the "guilty." ' (Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar 1970) p. 139, § 3.3; see *Arnold* v. *Arnold*, 76 Cal.App.2d 877, 885-886 [174 P.2d 674]; *Webber* v. *Webber*, 33 Cal.2d 153, 157-158 [199 P.2d 934].) Under The Family Law Act the matter of spousal support is still addressed to the judicial discretion of the trial court upon a consideration of 'the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment without interfering with the interests of the children of the parties in the custody of such spouse.' (Civ. Code, § 4801, subd. (a).) However, the specific circumstances now mentioned in the statute (the duration of the marriage and the ability of the supported spouse to engage in gainful employment) have long been among the circumstances considered by the courts in making awards of spousal support. (See The California Family Lawyer (Cont.Ed.Bar 1963) § 28.23, pp. 1333-1336 and cases cited; Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar 1970) *supra*.) Thus, the change effected by Civil Code, section 4801 was the elimination of the

consideration of the comparative marital fault of the parties and the 'concept of granting support to the "innocent" or against the "guilty." ' (See Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar 1970) *supra*, § 3.3, pp. 139-140.) In determining the need for, the amount of and the duration of spousal support under The Family Law Act the court is to ignore marital fault and is to base its determination solely on the circumstances of the parties, including the duration of their marriage and the ability of the supported spouse to engage in gainful employment. (Civ. Code, § 4801, subd. (a).) ' "Circumstances" includes "practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties." [Citation omitted.] "[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as ability to earn and actual earnings." [Citation omitted.]' (*Hall* v. *Hall*, 42 Cal.2d 435, 442 [267 P.2d 249]; see also the enumeration of factors to be considered set forth in The California Family Lawyer (Cont.Ed.Bar 1963) *supra*.)"

■ After considering all of the relevant circumstances of the parties to this action as shown by the evidence, we conclude that the refusal of the trial court to award spousal support did not constitute an abuse of discretion. A detailed analysis is not required to demonstrate that the circumstances of the husband and wife in this case are vastly different from those of the parties in *Rosan*.

With an estate exceeding $400,000 producing income of more than $20,000 per annum, it would seem to be a matter to be determined by appellant's preference whether she should utilize her potential earning capacity as a medical doctor to augment the income from her securities. The income from those securities in 1969 approximated the amount of her total expenditures for the living expenses of herself and the three children for the year 1970.

In taking an overall view of this case and in reflecting upon the fairness of the support orders and of the division of the community property, it is impossible to overlook the gifts of appellant's parents, which admittedly contributed to a very substantial extent to the size of the community estate. Our holding that substantial evidence supports the findings of the trial court leading to the conclusion that appellant is not entitled to reimbursement for commingled proceeds of these gifts of her parents does not mean that the admitted truth concerning them should be completely ignored by a court of equity. Every dictate of reason suggests that respondent's moral obligations are affected by these considerations. By the same token

they art not wholly irrelevant in determining his legal obligations with respect to the support of his minor children.

### Income Tax Liabilities

■ Citing *Hill* v. *Hill,* 82 Cal.App.2d 682 [187 P.2d 28], appellant contends that the trial court erred in failing to determine the income tax liabilities of the parties for the years 1970 and 1971 and in failing to make any appropriate provision for the payment of such taxes to the end that she would not bear more than her share of their burden.

Respondent agrees that such a determination would have been proper and correctly points out that his offer of the evidence necessary to provide a basis for such a determination was rejected on the basis of objections interposed by appellant's counsel. Hence, the court below was not required to determine tax liabilities in the absence of any sufficient showing of their existence. (*Weinberg* v. *Weinberg, supra,* 67 Cal.2d 557, 567.)

While we agree with respondent that appellant's counsel invited the error, we conclude that if any controversy continues to exist with respect to income taxes, the trial court on remand should receive whatever admissible evidence is offered to enable the court to resolve the matter on an equitable basis.

The portion of the judgment relating to child support is reversed. On remand the trial court will redetermine the amount to be awarded appellant for the support of the minor children and also determine whatever controversy may exist with respect to the income tax liabilities of the parties. In all other respects, the judgment is affirmed. The costs on this appeal will be borne by the parties equally.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 18, 1972.