[No. H036582. Sixth Dist. Dec. 8, 2011.]

In re the Marriage of CHARLENE and JAMES GUASCH.
CHARLENE GUASCH, Respondent, v.
JAMES GUASCH, Respondent; PAMELA CARMODY, Appellant.

COUNSEL

Lawrence D. Miller for Appellant.

Donald E. Kilmer for Respondent Charlene Guasch.

OPINION

ELIA, J.—Appellant Pamela Carmody served a writ of execution on community property held by respondents Charlene and James Guasch, who were undergoing marital dissolution proceedings. The family court granted Charlene's request to quash the writ of execution and enjoin further enforcement of a default judgment appellant had obtained against James after his separation from Charlene. Appellant contends that the court should have applied Code of Civil Procedure section 529 (hereafter, section 529) by requiring Charlene to post a bond to secure payment of James's debt. We disagree and affirm the order.

*Background*

Charlene filed a petition for dissolution of her marriage to James on April 18, 2006. By stipulation appellant was joined in the proceeding. Both before and during the divorce proceedings James expressed threats and a desire to kill Charlene, and in June 2007 he solicited Charlene's murder, for which he

was subsequently convicted.[1] Appellant, who was James's girlfriend, was convicted by plea in November 2007 as an accessory to the solicitation, among other offenses.

On April 28, 2010, appellant obtained a default judgment against James for $224,177.61, resulting from her loan of funds for James's bail and other obligations. On August 5, 2010, the family court authorized Charlene to withdraw funds from investment accounts owned by both Guasches. Implementing this order was problematic, however, in part because appellant had served a writ of execution on one of the affected funds based on her judgment against James. Charlene advised the court that James had allowed appellant's judgment to be entered against him so that appellant could execute and enforce the judgment against community property rather than property held by James alone. Charlene asked the court to direct the American Fund to release the funds in accordance with the August 5 order, and to quash the writ of execution and abstract of judgment obtained by appellant against James. She also asked the court to restrain appellant from levying on any other property held by her and James, including community real property.

Appellant opposed Charlene's request, contending that it was appropriate to seek satisfaction of the judgment from community property. Appellant also invoked section 529, insisting that if the court were to enjoin execution of the judgment, Charlene should be required to post a bond equal to one and one-half times the amount of the judgment to prevent dissipation of the Guasches' assets. Charlene, however, maintained that a restraining order could be issued against appellant without a surety bond. Distinguishing *In re Marriage of Van Hook* (1983) 147 Cal.App.3d 970 [195 Cal.Rptr. 541], on which appellant was relying in her request for a bond, Charlene noted that appellant, unlike the creditor in *Van Hook*, was a party to the instant action. Calling attention to appellant's conviction of "conspiring with" James to murder her, Charlene urged the court to consider James and appellant "as one." In Charlene's view, James and appellant, having been unsuccessful in accomplishing her murder, were "now attempting to ruin [Charlene] financially. [James] allowed Claimant [(appellant)] to obtain a default judgment against him so that Claimant could attempt to execute and enforce the judgment against community assets of the party's [*sic*]." Charlene emphasized that appellant had sought execution only as to community funds, while leaving alone accounts held solely in James's name, even though the judgment was against only James.

Appellant, however, insisted that Charlene's only remedy was either "to satisfy the judgment voluntarily and seek reimbursement from the judgment

---

[1] This court affirmed James's conviction of solicitation on April 6, 2010. (*People v. Guasch* (Apr. 6, 2010, H032720 [nonpub. opn.].).)

debtor spouse [(i.e., James)] upon division of the property or to post a sufficient undertaking to protect the creditor's [(i.e., appellant's)] interest pending division of the property." The court, she acknowledged, had jurisdiction to issue Charlene's injunction, but an undertaking to such an order was a "mandatory" prerequisite under section 529. Otherwise, the injunction would be "void."

The family court determined that appellant was attempting to use her civil judgment and ensuing writs and abstracts of judgment as an end run around the court's exclusive jurisdiction over community property. In addition, the fact that appellant had not attempted to reach James's separate property, even while admitting that her purpose was to collect on his separate debt, indicated to the court that appellant was "using the civil judgment as a means of harassing [Charlene], especially since she failed to disclose the existence of the judgment or writ of execution at the hearing on August 5th. That is entirely improper and inequitable, and cannot be tolerated." The court further found both section 529 and the *Van Hook* case inapplicable. Accordingly, the court granted all of the relief requested by Charlene.

## Discussion

Although appellant takes issue with the subordinate points in the family court's reasoning, the central issue she raises is whether a bond was required under section 529 before the court was permitted to issue an injunction against her enforcement of her judgment against James. Because the appellate court reviews the correctness of the ruling, not the lower court's reasons, we focus on appellant's primary contention, that section 529 compelled the posting of an undertaking in this case.[2] She again invokes *In re Marriage of Van Hook, supra*, 147 Cal.App.3d 970, where the Third District held that courts are authorized to restrain judgment creditors from executing judgments against community property during the pendency of marital dissolution proceedings, but that the lower court had erred in entering a preliminary injunction against the creditor without requiring "satisfactory sureties" in accordance with section 529. (147 Cal.App.3d at p. 989.) The *Van Hook* court applied former Civil Code section 4359, which provided for ex parte restraining orders when the applicant followed the procedures outlined in Code of Civil Procedure section 527. The court extended this reference to Code of Civil Procedure section 527 to the sections following that section, and thus held that the family court should have required an undertaking under section 529 as well.

---

[2] We therefore need not address appellant's assertion of error in the court's conclusions (1) that it had *exclusive* jurisdiction to adjudicate this dispute as a function of its authority to divide marital property and (2) that appellant was pursuing enforcement against only community property, and not James's separate property, as a means of dissipating community assets.

It is unnecessary to weigh in on the soundness of this holding, because we agree with the court below that *Van Hook* is inapposite in light of subsequent legislative revisions of the applicable statutes. Even if former Civil Code section 4359 had been intended to encompass section 529 as well as section 527 of the Code of Civil Procedure, the enactment of the Family Code did not carry along that reference. In Family Code section 2045, the successor statute to former Civil Code section 4359, the Legislature dispensed with the requirement that a party seeking the ex parte order follow the application procedures outlined in former Code of Civil Procedure section 527; and like its predecessor, it certainly did not mention section 529.[3]

Appellant argues that the court "erroneously relied on Family Code [section] 2045." She notes that this statute pertains to ex parte orders, which were not sought in this case, and that the *Van Hook* court's reference to former Civil Code section 4359 (the predecessor to Fam. Code, § 2045), "which in turn referenced Code of Civil Procedure [section] 529[,] is not applicable to the case at bar." Appellant's argument only diminishes the value of her own reliance on *Van Hook*. In any event, the court in this case did not rely on Family Code section 2045; it merely pointed out that when former Civil Code section 4359 was redrafted as Family Code section 2045, the new statute omitted any mention of Code of Civil Procedure section 527 application procedures. The only relevance of the court's observation is its perception that the absence of any reference to section 529 undermines appellant's reliance on that statute to impose a bond requirement in marital dissolution proceedings. If, as appellant appears to suggest, we disregard Family Code section 2045, the issue nonetheless remains as to whether the court was obligated to require an undertaking before issuing the injunction against appellant.

■ The statute on which the court primarily relied is not Family Code section 2045, but Family Code section 2010, which confers broad authority on the court to make appropriate orders concerning "[t]he settlement of the property rights of the parties." Appellant maintains that the authority conferred by Family Code section 2010 is subject to Code of Civil Procedure section 529, such that an undertaking is required before any injunction may issue against levying on community property to execute a judgment against one of the parties to a dissolution proceeding. She urges that section 529 need not be specifically mentioned in a statute to be applicable to injunction requests. ■ While that point is accurate generally, family law issues are

---

[3] It also bears noting that in *Van Hook* both spouses sought to restrain the debtor spouse's creditor; here, on the other hand, only Charlene, the *nondebtor* spouse, sought injunctive relief from appellant's levy and writ of execution. The family court suggested, consistent with Charlene's position, that appellant and James may have been "acting in concert to dissipate the community estate while preserving [James's] separate interests."

resolved through specialized procedures that are removed from ordinary civil actions. Family Code section 211 states, *"Notwithstanding any other provision of law*, the Judicial Council may provide by rule for the practice and procedure in proceedings under this code." (Italics added.) Implementing this declaration of intent to segregate family law procedures is California Rules of Court, rule 5.21,[4] which states, "Except as otherwise provided in these rules, all provisions of law applicable to civil actions generally apply to a proceeding under the Family Code if they would otherwise apply to such proceeding without reference to this rule. To the extent that these rules conflict with provisions in other statutes or rules, these rules prevail." As the Supreme Court explained with reference to the predecessors to Family Code section 211 and rule 5.21 (i.e., Civ. Code, former § 4001 and former rule 1206, respectively), "[t]he practical effect of [Civil Code former] section 4001 . . . is to remove any restraints of statutory consistency on the Judicial Council's rules of practice and procedure under the Family Law Act. . . . [¶] . . . The Family Law Rules . . . supersede contrary statutes because the rules were adopted pursuant to and are consistent with specific constitutional and statutory authorizations having this effect. [Citations.]" (*In re Marriage of McKim* (1972) 6 Cal.3d 673, 678, fn. 4 [100 Cal.Rptr. 140, 493 P.2d 868], citations omitted, citing *In re Marriage of Dover* (1971) 15 Cal.App.3d 675, 678, fn. 3 [93 Cal.Rptr. 384] [the words "Notwithstanding any other provision of law" (Fam. Code, § 211) make Family Law Act rules " 'sui generis' and controlling over both statutory and decisional law"]; see also *In re Marriage of Fink* (1976) 54 Cal.App.3d 357, 365 [126 Cal.Rptr. 626] [aim of flexibility in family court procedure underlies Civ. Code, former § 4001]; *In re Marriage of Lusk* (1978) 86 Cal.App.3d 228, 232–233 [150 Cal.Rptr. 63] [following *Fink*].)

■ It is true that a civil statute is applicable in family court proceedings if it does not conflict with statutes and rules adopted under the Family Law Act. However, the Judicial Council was not completely silent regarding the rules for injunctive relief in family law proceedings. Rule 5.106 allows the court to grant such relief against any interested person "to protect the rights of either or both parties to the proceeding under the Family Code." Rule 5.118, which must be followed to obtain an injunction under rule 5.106, prescribes the elements of an application for such an order. Those elements do not include the posting of an undertaking; on the contrary, the court "may grant or deny the relief solely on the basis of the application and responses and any accompanying memorandum of points and authorities." (Rule 5.118.) We believe that both the broad jurisdiction conferred on the family court judge and the specific guidelines for issuing injunctive relief in dissolution proceedings defeat appellant's claim that a bond was required before Charlene could obtain such relief.

---

[4] All further references to specific rules are to the California Rules of Court.

The removal of procedural limitations on judicial authority in marital dissolution proceedings is further reinforced by rule 5.140, which states, "In the exercise of the court's jurisdiction under the Family Code, if the course of proceeding is not specifically indicated by statute or these rules, any suitable process or mode of proceeding may be adopted by the court that is consistent with the spirit of the Family Code and these rules." We believe that the court's refusal to impose a bond requirement on Charlene, the *nondebtor* spouse, was a proper exercise of its jurisdiction to make appropriate orders concerning "the settlement of the property rights of the parties." As noted earlier, appellant does not take issue with the court's authority to restrain her enforcement of the judgment. The court evidently concluded, after receiving all of the evidence, that the only avenue "consistent with the spirit" of the Family Code and concomitant rules was to quash appellant's writ of execution and restrain her from further enforcement of the civil judgment through her attacks on community property. The court's ruling was also consistent with its intent to divide marital assets without harm to either spouse. The court appears to have been persuaded in part by the appearance of collusiveness between appellant and James to harm Charlene financially, together with the finding that appellant was pursuing only community property. The court apparently credited Charlene's declaration that she would suffer foreclosure and other adverse consequences from the unavailability of her share of the community funds that the court had already ordered released to her.

Appellant's protest that there was no evidence that James had any separate property for her to reach is unavailing. The ruling under scrutiny here was limited to the issue of whether Charlene should be required to post a bond. Even if the court incorrectly assumed that accounts in James's name alone constituted his separate property, no error occurred in declining to require an undertaking by Charlene to secure payment of a debt that was not hers.

We thus conclude that the lower court acted within its power under the Family Law Act to preserve community property pending division of that property between James and Charlene. As the court observed, appellant "can request whatever satisfaction she finds appropriate at the time the Court makes a final disposition of each party's share of the community trust proceeds." Until that disposition is reached, appellant may levy against James's separate property to whatever extent that exists. A bond payable by Charlene to secure appellant's judgment against James was not mandatory or necessary in these circumstances, and the court did not err in rejecting appellant's request under section 529.

*Disposition*

The order is affirmed.

Rushing, P. J., and Premo, J., concurred.