Filed 3/16/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| TIMOTHY S. LANQUIST et al., | 2d Civil No. B251179 |
| Plaintiffs and Appellants, | (Super. Ct. No. 56-2011-404515-CU-WM-VTA ) |
| v. | (Ventura County) |
| VENTURA COUNTY EMPLOYEES' RETIREMENT ASSOCIATION, | |
| Defendant and Respondent; | |
| COUNTY OF VENTURA, | |
| Real Party in Interest and Respondent. | |

Ventura County Employees' Retirement Association (VCERA) permits employees to purchase retirement service credit for time spent in military service. It excludes time spent as a midshipman at the United States Naval Academy (Academy). Our interpretation of a Ventura County Board of Supervisors' resolution, adopting the County Employees Retirement Law (CERL), leads us to the opposite conclusion. "Military service" includes service as a midshipman. (Gov. Code, § 31450 et seq.)[1]

Ventura County employees Timothy S. Lanquist and Thomas W. Temple appeal a judgment denying their petition for a writ of mandamus to compel VCERA to grant their requests to purchase retirement service credit for military service as

---

[1] All statutory references are to the Government Code unless otherwise stated.

midshipmen at the Academy. We reverse the judgment and direct the trial court to issue a writ of mandamus requiring VCERA to grant their requests.

FACTUAL AND PROCEDURAL BACKGROUND

Lanquist and Temple served as midshipmen at the Academy for about four years before they became commissioned naval officers. Temple was enlisted before he attended the Academy; Lanquist was not. Both men later became employees of Ventura County. Lanquist is a deputy sheriff, and Temple is an assistant county counsel. They are members of VCERA.

Lanquist and Temple applied to VCERA to purchase retirement service credit for their military service. They supported their requests with copies of their "DD214" forms. The Department of Defense uses DD214 forms to record and report transfer or separation of military personnel from a period of active duty. (32 C.F.R. § 45.2.) Lanquist's and Temple's forms did not include their Academy time in the box labeled "Record of Service." Temple's form did include a "Remark" that reported his Academy time.

Lanquist and Temple supplemented their DD214 forms with letters from the Department of the Navy certifying that their service of four years as midshipmen at the Academy was "continuous active duty." The letters, signed by the Academy's registrar, state that Lanquist and Temple "attended the United States Naval Academy on continuous active duty in the U.S. Navy." While attending, they were compensated by "pay and allowances as were authorized for an active duty member of the Navy," and were subject to the Uniform Code of Military Justice.[2] The letters also refer to two provisions of the United States Code that define "active duty" to include "attendance, while in the active military service, at a school designated as a service school."[3]

VCERA denied Lanquist's and Temple's requests to purchase retirement service credit for midshipmen service at the Academy. It granted, however, their requests

---

[2] (10 U.S.C. § 802(a)(2) [Uniform Code of Military Justice applies to "[c]adets, aviation cadets, and midshipmen"].)

[3] (10 USCS § 101(d)(1); 37 U.S.C. 101(18).)

2.

to purchase retirement service credit for all other military service. This included 40 weeks Temple spent at the Naval Academy Preparatory School before he attended the Academy and two years Lanquist spent afterward at the Naval Postgraduate School earning a master's degree.

VCERA explained that it did not consider service as a midshipman at the Academy to be creditable "active duty." It based its decision on a 1979 legal opinion letter prepared by an assistant county counsel. The 1979 letter "appl[ied] rules of statutory construction" to conclude that "military academy schooling does not qualify as creditable public service; to qualify as creditable public service, military service must be active military duty in the armed forces of the United States." Counsel reasoned that the "ordinary meaning" of "military service" in the CERL is "active service," based on several opinions of the California Attorney General that considered the question whether creditable service for military service is active duty. Those opinions did not discuss academy time or federal law defining the term "military service" or "active duty."

In a subsequent letter to Lanquist in 2007, VCERA "confirm[ed] [its] prior conclusion that such schooling [at the Academy] does not constitute 'active duty' military service" and he is therefore ineligible for retirement service credit. VCERA relied on federal authorities to conclude that training at a military academy is only "active duty" if it takes place after an officer is commissioned. It cited section 971 of title 10 of the United States Code for the proposition that general military law "does not consider academy schooling as active duty 'service' when computing length of service for *any* purpose, including eligibility for retirement service credit."[4]

Lanquist and Temple appealed VCERA's denial to the VCERA retirement board. At the hearing, Lanquist and Temple presented evidence that as midshipmen at the Academy they were compensated as active duty servicemen and experienced hardships and dangers on surface cruises with active naval vessels similar to those experienced by commissioned officers.

---

[4] "[S]ervice as a cadet or midshipman . . . may not be counted in computing, for any purpose, the length of service of an officer . . . ." (10 U.S.C. § 971(a).)

3.

The retirement board upheld VCERA's denial, on a two-to-six vote, with one abstention. Two members stated their belief that they "have to comply with [County of Ventura's] interpretation of the resolution" in the 1979 opinion letter. One member asked staff to research the issue whether the retirement board had authority to promulgate a rule allowing credit for Academy time.

Lanquist and Temple filed a petition for writ of mandamus and complaint for declaratory relief in the trial court. In addition to the administrative record, they requested judicial notice of various legislative, administrative, and other official acts of the United States government pertaining to cadets and midshipmen.

VCERA submitted a declaration from VCERA's retirement benefits manager. The manager stated that VCERA allows military service credit only for that "period reported in the member's [DD214] Record of Service," and has followed this policy for over 30 years. It does so in reliance on the 1979 opinion letter, and "later opinions [that] confirm and expand upon the 1979 opinion" to explain that "military academy service" is ineligible because the "DD Form 214's do not identify . . . academy attendance . . . as active duty service," and because "such service is not identified by the Department of the Navy as active duty service that is creditable for retirement pay."

The VCERA retirement benefits manager declared that written procedures for processing "buy back" requests require certification for "active military service" with a DD214 form. VCERA uses a "Public Service Worksheet" to calculate the cost of service credit purchases. That worksheet requires the retirement specialist to record the "Dates of Service" and to indicate the source of proof as "DD214" or "other." The manager declared that VCERA does not accept evidence of compensation as a cadet or midshipman at the Academy as proof of prior military service.

Lanquist and Temple submitted a declaration of Clifford L. Williams, Jr., a Ventura County district attorney investigator, who stated that VCERA denied his request to purchase retirement service credit as a cadet at the United States Air Force Academy in 2011, although that period of service was listed in the "Record of Service" block of his DD214 form. Williams's form is an older version than the forms issued to Lanquist and

4.

Temple. It includes a remark: "Ref Item #18a is cadet time at USAF Academy and not creditable for basic pay purposes in a commissioned status."

The trial court denied the petition. It determined that VCERA's policy of denying retirement service credit for service at the Academy is "appropriate" in view of state and federal authorities interpreting the terms "public service," and "active duty." It gave "some consideration" to VCERA's interpretation, in deference to VCERA's technical expertise with regard to administration of retirement systems.

## DISCUSSION

### *Standard of Review – Agency Interpretation of Statute*

Our review of the trial court's decision is de novo. (*Prentice v. Board of Administration* (2007) 157 Cal.App.4th 983, 989.) Our review of an agency's quasi-legislative administrative decision is limited to a determination whether the action was arbitrary, capricious, lacking in evidentiary support, or contrary to procedures provided by law. (Code Civ. Proc., § 1085; *California Teachers Assn. v. Ingwerson* (1996) 46 Cal.App.4th 860, 867.) But our review of an agency's interpretation of a statute is not so limited. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7.) We "'tak[e] ultimate responsibility for the construction of the statute, [but] accord[] great weight and respect to the administrative construction.'" (*Id.* at p. 12.) The quasi-legislative standard of review is not applicable here because VCERA did not exercise discretionary rule-making power; it merely construed a statute. (*Ibid.*)

The weight we accord VCERA's interpretation depends upon factors that include the agency's expertise and technical knowledge, indications of careful consideration by the agency's senior officials, evidence that the agency consistently maintained the interpretation over time, and indications that the interpretation was coterminous with enactment of the statute. (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal. 4th 1, 12.) An interpretation of a statute contained in a regulation adopted after public notice and comment is more deserving of deference than one contained in an opinion letter prepared by a single staff member. (*Id*. at p. 13.) VCERA's denial was based on an opinion letter prepared by counsel that interpreted the

5.

CERL and the resolution. It is not embodied in a regulation. VCERA has expertise and technical knowledge in the operation and management of a retirement plan, but it does not have expertise in the nature of active military service. It has plenary authority over administration of the retirement system only within the confines of the CERL. (Cal. Const., art. XVI, § 17; § 31520 [management of a county retirement system vested in the retirement board].) Like the trial court, we give VCERA's interpretation due consideration. But we reach a different result.

*The Statutory Framework*

Under the CERL, a county employee may purchase additional retirement service credit based on "allowed" prior service for a public agency if the county has adopted the applicable provisions of the CERL. (§§ 31641.1, 31641.95.[5]) The United States military is a public agency for purposes of the CERL. (*Ibid.*) A county's board of supervisors may limit applicability to one or more public agencies. (§ 31641.95; *Association of Orange County Deputy Sheriffs v. County of Orange* (1982) 138 Cal.App.3d 569, 570, 572 [Orange County properly limited applicability to exclude all military service].)

In 1974, the Ventura County Board of Supervisors (Board) adopted the provisions of the CERL that authorize purchase of retirement service credit for previous "military service." It did not limit or define that term. It did not adopt any resolution excluding service as a midshipman at the Academy from eligible "military service." [6] The term "military service" is not defined by the CERL. VCERA has promulgated no rules to define or limit it.

---

[5] "Sections 31470.7, 31478, 31479, 31480, 31641.1, 31641.2, 31641.3, 31641.4, 31641.8, and 31641.9 may only be applicable in any county or district on the first day of the month after the governing board of such county or district adopts, by majority vote, a resolution providing that those sections shall become applicable in such county or district. Such resolution may limit the applicability of such sections to any one or more of the public agencies as defined by Section 31478." (§ 31641.95.)

[6] We express no opinion on its authority to do so.

A handbook submitted by VCERA defines "public service" to include employment with any department or agency of the United States government, including "active military service."  In response to a request for public information, VCERA stated it has "no particular records that evidence the definition of 'military service' or 'service in the armed forces.'"  VCERA's retirement benefits manager declared that its written procedures require certification of military service with a DD214 form.

The CERL defines creditable "public service" to be service rendered (a) for "compensation," and (b) as "an officer or employee" of a public agency, such as the U.S. military.  (§§ 31479, 31478.)  VCERA contends that midshipmen are neither compensated nor employees and their service is, therefore, not creditable.

*(a) Midshipmen Compensation*

Lanquist and Temple submitted evidence that they "received compensation" as midshipmen by "pay and allowances as were authorized for an active duty member of the Navy."  VCERA contends the letters from the Department of Defense are immaterial because the CERL requires that the service be "established to the satisfaction of the [county's retirement] board."  (§ 31641.4.)  That is only part of a disjunctive provision.  Section 31641.4 provides:  "The service for which he elects to contribute . . . must be *certified to by an officer of the public agency where he rendered such public service* or must be *established to the satisfaction of the board*."  (Italics added.)  The Board adopted this provision without limitation.  The Navy is the agency where Lanquist and Temple rendered service.  The letters certified that both men were "on continuous active duty" and were compensated by "pay and allowances as were authorized for an active duty member of the Navy."  The letters satisfy section 31641.4.

*(b) Midshipmen as Employees*

The California Attorney General has broadly interpreted the term "employee" in sections 31479 and 31478 to include "enlisted men."[7]  (30 Ops.Cal.Atty.Gen. 49, 51 (1957).)  The Attorney General has not considered whether "employee" includes a person who attends a military academy.  The term "employee" has

_____

[7] We prefer "persons."

7.

no fixed meaning. (*Knight v. Board of Administration* (1948) 32 Cal.2d 400, 402.) "The flexibility of the term 'employee' is of special significance when considered in connection with the rule that statutory provisions for pensions must be liberally construed to the end that their beneficial purposes are broadened rather than narrowed." (*Ibid.*)

In determining the meaning of a statute, we look first to its language as the most reliable indicator of legislative intent, giving the words their ordinary and usual meaning and construing them in their statutory context. (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 305.) If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls. (*Ibid.*) The terms "officer or employee of a public agency" and "military service" do not plainly exclude service as a midshipman. In the absence of any further definition in the CERL, we consider (but are not bound by) the federal government's use of the term "military service" in the context of retirement service credit for midshipmen.

The general military law defines "active duty" to include "attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned." (10 U.S.C. § 101(d)(1) [definitions applicable to title 10, Armed Forces]; 37 U.S.C. § 101(18) [definitions applicable to title 37, Pay and Allowances of the Uniformed Services]; 38 U.S.C. § 101(21) [definitions applicable to title 38, Veterans' Benefits].[8])

A retiring federal civilian employee may purchase credit for military academy time in the federal retirement system. (5 U.S.C. §§ 8332(c)(1)(B) [civil service retirement credit shall include credit for "military service"]; 8331(13)(C) ["military service" is honorable active service including service "as a midshipman at the United States Naval Academy"]; 8411(c)(1) [a member of the Federal Employee's Retirement

_____

[8] "Active duty" is "full-time duty in the active military service of the United States," including "full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned." (10 U.S.C. § 101(d)(1); 37 U.S.C. § 101(18).) "Active duty" includes "service as a cadet at the United States Military, Air Force, or Coast Guard Academy, or as a midshipman at the United States Naval Academy." (38 USCS § 101(21)(D).)

System shall be allowed credit for "military service"]; 8401(31)(C) ["military service" is honorable active service including service "as a midshipman at the United States Naval Academy"].) The contrary holding in *Horner v. Jeffrey* (Fed.Cir. 1987) 823 F.2d 1521 (*Horner*) was superseded by enactment of 5 United States Code section 8331. The United States Office of Personnel Management requested the enactment in 2007 to "clarify the use of service as a cadet at a U.S. military academy for civilian retirement purposes," consistent with a "long-standing policy."

A retiring enlisted person is allowed retirement service credit for service as a midshipman at the Academy, but a retiring officer is not. (10 U.S.C. §§ 8911 [service years for enlisted retirement], 971(a) ["The period of service under an enlistment or period of obligated service while also performing service as a cadet or midshipman or serving as a midshipman . . . may not be counted in computing, for any purpose, the length of service of an officer"].)

Thus, an enlisted staff sergeant is allowed retirement service credit for prior service at a military academy (1980 U.S. Comp.Gen. LEXIS 3352); whereas, a Coast Guard officer is not. (*Jacobs v. U.S.* (9th Cir. 1982) 680 F.2d 88.) "[S]ervice as a cadet or midshipman at a service academy is creditable for the purpose of determining eligibility for retirement under 10 U.S.C. 8914 (enlisted retirement) but is not creditable for a member retiring under 10 U.S.C. 8911 (commissioned officer retirement)." (1980 Comp.Gen., *supra*.) Similarly, the United States Bureau of Naval Personnel, Instructions for Issuance of DD 214 provides at page 11: "[S]ervice while attending a service academy as a midshipman, USN, or as a cadet is creditable for enlisted members reverted to enlisted status, but in no case is it creditable for warrant or commissioned officers."

VCERA points out that Lanquist and Temple were both commissioned officers before they separated from the military. But they are not commissioned officers now. They are not retiring in a commissioned officer status.

An enlisted person is allowed retirement service credit for Academy time even if they were a commissioned officer for a period of time. For example, in the Comptroller General's opinion, Staff Sergeant Shirley was entitled to credit in the military

9.

retirement system for his four years of service as a cadet at the Air Force Academy, even though he was a commissioned officer for 14 years, because he was not an officer when he retired. He resigned from his appointment as an officer and later enlisted in the regular Air Force; then he retired. (1980 U.S. Comp.Gen., *supra*.)

Like Staff Sergeant Shirley, Lanquist and Temple are no longer commissioned officers. They are former commissioned officers who separated from the military and became civilian public employees before retiring. The military therefore would consider their attendance at the Academy to be "military service" and "active duty" for purposes of retirement service credit. (5 U.S.C. §§ 8332(c)(1)(B), 8331(13), 8411(c)(1), 8401(31).) The language of the CERL does not suggest our Legislature intended more restrictive use of the terms. The Board has not acted to limit credit for military service under the CERL. Accordingly, we interpret the terms "public service" and "military service," as used in the CERL, and adopted by the Board, to include service as a midshipman at the Academy.

*California Public Employees' Retirement System's (CalPERS) Policy*
*With Regard to Academy Time*

We are not persuaded by VCERA's unproven assertion that CalPERS excludes Academy time. The Government Code provides that a member of CalPERS may purchase prior retirement service credit for "active service with the Armed Forces or the Merchant Marine of the United States." (§§ 21024, 21050.) The term "active service" is undefined. The CalPERS Board of Administration has promulgated rules governing its administration, but none interpret or limit the term "active service."

*Other States' Practices With Regard to Academy Time*

VCERA cites several out-of-state cases that uphold agency decisions to deny retirement service credit for Academy time. (*Donovan v. State Employees' Retirement System* (Pa. 1997) 701 A.2d 310; *Canzoneri v. Hevesi* (N.Y. 2005) 2l A.D.3d 639; *Morris v. Division of Retirement* (Fla. 1997) 696 So.2d 380; *Crawford v. Department of Transportation* (Fed.Cir. 2004) 373 F.3d 1155; *Whalen v. Office of Personnel Management* (Fed.Cir. 1992) 959 F.2d 924.) These cases are unpersuasive because they

10.

involve dissimilar statutory schemes, rely on the superseded *Horner* opinion, or are factually inapposite.

## DISPOSITION

We reverse the judgment and direct the trial court to issue a writ of mandamus requiring VCERA to allow Lanquist and Temple to purchase retirement service credit for midshipman service at the Academy. Costs are awarded to appellants Lanquist and Temple.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Timothy S. Lanquist, in pro. per., for Plaintiff and Appellant.

Thomas W. Temple, in pro. per., for Plaintiff and Appellant.

Leroy Smith, County Counsel, Lori A. Nemiroff, Assistant County Counsel, for Defendant and Respondent Ventura County Employees' Retirement Association.

Atkinson, Andelson, Loya, Ruud & Romo, Edward B. Reitkopp for Real Party in Interest and Respondent County of Ventura.