Filed 6/30/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARIANNE IRVIN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CONTRA COSTA COUNTY<br>EMPLOYEES' RETIREMENT<br>ASSOCIATION et al.,<br><br>        Defendants and Respondents. | A149642<br><br>(Contra Costa County<br>Super. Ct. No. CIV MSN15-1024) |

        Plaintiff Marianne Irvin and her late husband, Richard Irvin (respectively, Marianne and Richard), obtained a judgment of legal separation a few months before his death.  Notwithstanding the separation, the couple's agreement dividing their assets reflected Richard's intent that Marianne would receive the pension benefits available to a surviving spouse after his death.  Defendant Contra Costa County Employees' Retirement Association Board of Retirement (Board), however, denied Marianne those benefits, concluding she was not Richard's "surviving spouse" for purposes of the governing statute as a result of the legal separation.  In the absence of an applicable statutory definition for the term, the Board relied on the definition of "surviving spouse" found in the Probate Code.  In denying Marianne's petition for a writ of mandate, the trial court accepted that rationale.

        We reverse.  Because the entry of a judgment of legal separation does not terminate a marriage, but only separates a couple's economic interests, the plain meaning of the term "surviving spouse" includes a legally separated person.  The Board has provided no persuasive reason for departing from this plain meaning.  While the Probate

Code defines "surviving spouse" generally not to include a person who is legally separated, several substantive provisions of the Probate Code treat legally separated spouses in the same manner as a surviving spouse. For that reason, no meaningful conclusion can be drawn from the Probate Code's definition. Further, the Board has not articulated any plausible public policy that would be furthered by the denial of continuance benefits in these circumstances.

## I. BACKGROUND

Richard, a 30-year employee of the county, was a member of the Contra Costa County Employees' Retirement Association (Association), a pension plan governed by the County Employees Retirement Law of 1937 (CERL; Gov. Code,[1] § 31450 et seq.). Richard retired in 1988 and married Marianne six years later, in 1994. Beginning in 2001, Richard began to suffer from serious medical conditions that lingered for the remainder of his life and required extensive and expensive medical care. The couple separated in 2008, and Marianne filed a petition for legal separation the following year. Although Richard responded with an action for divorce, he later withdrew that response and did not oppose the legal separation.

The couple reconciled in 2012, but they nonetheless finalized their separation in October 2013 through the entry of a judgment of legal separation, apparently to insulate Marianne's assets from the claims of Richard's creditors. The judgment was entered pursuant to a "Marital Settlement and Legal Separation Agreement" (marital agreement), which was intended "to make a final and complete settlement of all financial issues regarding the parties['] marriage." The marital agreement acknowledged that the pension was Richard's separate property, but it required him to maintain Marianne as a pension beneficiary and indicated his intent that Marianne would be his "surviving spouse" for purposes of the pension.

---

[1] All further statutory references are to the Government Code, unless otherwise indicated.

2

Richard died early the following year. Notwithstanding the formalization of their separation, Marianne later told the Board: "We were not really separated [during the final months of Richard's life]. I was with him every day throughout, and I was with him at the time of his death. And I was his advocate. I had power of attorney for him. And I—you know, for all the legal decisions, all the medical decisions. This was not a distant separation."

Upon Richard's death, Marianne was eligible to receive a portion of his monthly benefits for the remainder of her life (continuance benefits) if she qualified as his "surviving spouse" for purposes of CERL. (§ 31760.2.) When Marianne requested continuance benefits from the Association, she was refused on the ground that, as a result of the judgment of legal separation, she did not qualify as a surviving spouse. Because the pension statutes do not define "surviving spouse," the Association's legal conclusion was premised on Probate Code section 78, subdivision (d), which defines the term for purposes of that code not to include spouses who are subject to a judgment of legal separation.[2] The Association originally adopted this position in 2009, on the basis of an opinion prepared by outside counsel, and has applied it consistently since that time. Upon Marianne's appeal, the Association's position was affirmed by the Board.

Marianne filed a petition for writ of mandate challenging the Board's decision. The trial court denied the writ, relying in large part on the definitional provisions of Probate Code section 78 and the rationale of a statement of decision rendered in 2013 by the Superior Court of Santa Barbara County, *In re Marriage of Burson* (2013, No. 1197730) (*Burson*), which concluded that a spouse subject to a judgment of legal separation is not a "surviving spouse" for purposes of section 31760.1, a related statute.[3]

---

[2] To avoid the awkwardness of the phrase "spouses who are subject to a judgment of legal separation," we hereafter refer to such a spouses as "legally separated spouses." In using the phrase, we do not mean to include spouses who are living separate and apart, without the entry of an actual judgment of legal separation.

[3] The parties have included the *Burson* decision in the appellate record and have discussed it in their briefs. We may consider it for its persuasive value, unlike a

3

# II.  DISCUSSION

## A.  *Applicable Law*

### 1.  *Judgment of Legal Separation*

Critical to the interpretation of section 31760.2 is an understanding of the remedy of legal separation.  It is descended from an early California Supreme Court decision that allowed a deserted wife to obtain financial support from her husband without suffering the religious or social disapproval attendant upon a divorce.  In that ruling, *Galland v. Galland* (1869) 38 Cal. 265, the court held that a wife, "who, without cause or provocation, is driven from her husband's house . . . and is wholly without the means of support," has a common law right of action against the husband for a "reasonable allowance, for the maintenance of herself and child," without being required to sue for divorce.  (*Id.* at pp. 266, 271–272.)  Nearly 10 years later, the Legislature made the remedy available by statute in former section 137 of the Civil Code (Amends. to Codes 1877–1878, ch. 298, § 1, p. 76), which eventually allowed a wife who had any grounds for divorce to sue for a decree of "separate maintenance" as an alternative to seeking dissolution of the marriage.  (*Hiner v. Hiner* (1908) 153 Cal. 254, 257–258; *Sweasey v. Sweasey* (1899) 126 Cal. 123, 128–129, disapproved on other grounds in *De Burgh v. De Burgh* (1952) 39 Cal.2d 858, 871; Stats. 1905, ch. 216, § 1, p. 205.)  Not only did this secure support for the wife, it prevented the husband from using the threat of nonsupport as leverage to obtain a divorce from an unwilling wife.  As noted in *Sweasey*, "the wife, having a good cause for a divorce, may, if her circumstances require it, . . . apply for a separate maintenance without seeking for a divorce.  A husband who wishes to be freed from a deserted wife cannot starve her into the necessity of suing for a divorce, which his guilt and her innocence would alike prevent him from obtaining."  (*Id.* at p. 129.)  In 1917, former section 137 of the Civil Code was amended to require the court to divide the "community property" and "the homestead, if any," in the same manner as it would in

---

nonpublished decision from the Court of Appeal.  (*Brown v. Franchise Tax Bd.* (1987) 197 Cal.App.3d 300, 306, fn. 6.)

4

the event of a divorce, as well as to determine maintenance. (Stats. 1917, ch. 36, § 1, p. 35; see *Krier v. Krier* (1946) 28 Cal.2d 841, 843.)

The remedy of separate maintenance was retained as California's public attitudes toward marital relations evolved. As early as 1927, Civil Code section 137 was amended to make the remedy of separate maintenance available to both spouses.[4] (Stats. 1927, ch. 249, § 1, p. 441.) When the Legislature passed the Family Law Act in 1969,[5] making California the first state in the nation to enact no-fault divorce (*In re Marriage of Davis* (2015) 61 Cal.4th 846, 868 (conc. opn. of Liu, J.); *In re Marriage of McKim* (1972) 6 Cal.3d 673, 678), the legislation retained the substance of a decree of separate maintenance, although it changed the name to "legal separation" and enacted substantive modifications. (*Faught v. Faught* (1973) 30 Cal.App.3d 875, 878 (*Faught*); Stats. 1969, ch. 1608, § 8, pp. 3328, 3333, 3335.) Following adoption of the Family Law Act, the entry of a judgment of legal separation required the consent of both parties, and either spouse could convert the legal separation into a marital dissolution at any time by filing a petition for divorce. (Stats. 1969, ch. 1608, § 8, pp. 3324–3325; Civ. Code, former § 4508, subd. (b).)

By the 1970's, an action for legal separation was regarded as implementing the judicial concept of "divisible divorce," which recognizes that the economic aspects of a marital separation can be judicially resolved separately, in time and place, from the issue of marital status. (See generally *Hull v. Superior Court* (1960) 54 Cal.2d 139, 147–148; *In re Marriage of Gray* (1988) 204 Cal.App.3d 1239, 1248.) As the remedy was characterized in *Faught*, "Separate maintenance (now legal separation) is essentially a device to determine and settle the spouses' financial responsibilities to one another and to their minor children. While the law may once have been to the contrary [citation], a

---

[4] The exception was an action for separate maintenance based on a failure to provide, which continued to be available only to a wife. (Stats. 1927, ch. 249, § 1, p. 441.) That provision was not made gender neutral until 1951. (Stats. 1951, ch. 1700, § 1, p. 3910.)

[5] (Stats. 1969, ch. 1608, § 8, pp. 3314–3344.)

decree of separate maintenance now operates as a final adjudication of such financial aspects of the matrimonial relationship as spousal support, division of community property, and settlement of property rights, and to the extent the decree deals with such matters it is conclusive." (*Faught*, *supra*, 30 Cal.App.3d at p. 878.)

Under current law, a judgment of legal separation continues to permit the parties to a marriage to separate their financial affairs without severing their marital bonds. Unlike divorce, it is a wholly voluntary remedy. The family court can render a judgment of legal separation only with the consent of both parties, unless the judgment is taken by default (Fam. Code, § 2345), and either party is free, at any time, to convert the legal separation into a dissolution of the marriage by filing an appropriate petition (*id.*, § 2347). As in an order settling property rights upon dissolution, the court is instructed to split the couple's community property equally. (Fam. Code, § 2550.) Once the judgment is entered, the earnings of each party are deemed separate property (Fam. Code, § 772), and the parties' assets cannot be used to satisfy each other's debts (*id.*, § 910, subd. (b)). Because a judgment of legal separation deals only with the couple's financial affairs, it is regarded as "leav[ing] the marriage bonds intact." (*Estate of Lahey* (1999) 76 Cal.App.4th 1056, 1058 (*Lahey*).) Only a subsequent divorce can "terminate[] the marital status of the parties." (*Elam v. Elam* (1969) 2 Cal.App.3d 1013, 1020.)

## 2. *Relevant Pension Law*

Certain county pension plans are governed by CERL, which vests the administration of each county's plan in a retirement board, constituted according to the terms of the code.[6] (§ 31520; *Flethez v. San Bernardino County Employees Retirement*

---

[6] Only 20 of California's 58 counties are covered by CERL. (*Marin Assn. of Public Employees v. Marin County Employees' Retirement Assn.* (2016) 2 Cal.App.5th 674, 680, review granted Nov. 22, 2016, S237460.) The remaining counties operate an independent retirement system or contract with the state system, the California Public Employees' Retirement System (CalPERS). (See Sacramento County Employees' Retirement System Handbook, <http://www.retirement.saccounty.net/handbook/Pages/California-Counties%27-Retirement-Systems.aspx> [as of June 30, 2017].)

*Assn.* (2017) 2 Cal.5th 630, 635.) Each board is "required to administer the retirement system 'in a manner to best provide benefits to the participants of the plan' " and "owes fiduciary duties of good faith and loyalty to the county employees who are members of the retirement system." (*McIntyre v. Santa Barbara County Employees' Retirement System* (2001) 91 Cal.App.4th 730, 734.)

The provisions of interest here are contained in a group of Government Code provisions under the heading, "Optional Retirement Allowances." (§ 31760.) The default provision for the payment of benefits to a surviving spouse grants such benefits only to a person who was married to the pensioner prior to retirement. (§ 31760.1.) The more generous alternative provision applicable here, section 31760.2, must be affirmatively adopted by the Board.[7] (*Id.*, subd. (g).) Section 31760.2 grants continuance benefits to any surviving spouse, so long as that person was married to the pensioner for at least two years prior to his or her death and was at least 55 years old at the time of the pensioner's death.[8] (*Id.*, subds. (a), (b).) Such a surviving spouse is entitled to lifetime

---

[7] It is undisputed that the Board adopted section 31760.2, apparently in 2000.

[8] The applicable provisions of section 31760.2 state:

"(a) Notwithstanding Section 31481 or 31760.1, upon the death of any member after retirement for service or non-service-connected disability from a retirement system established in a county pursuant to this chapter, 60 percent of his or her retirement allowance, if not modified in accordance with one of the optional settlements specified in this article, shall be continued to his or her surviving spouse for life. If there is no surviving spouse entitled to an allowance under this section or if she or he dies before every child of the deceased member attains the age of 18 years, then the allowance that the surviving spouse would have received had he or she lived, shall be paid to his or her child or children under that age collectively, to continue until each child dies or attains that age. However, no child may receive any allowance after marrying or attaining the age of 18 years.

"(b) No allowance may be paid under this section to a surviving spouse unless he or she was married to the member at least two years prior to the date of death and has attained the age of 55 years on or prior to the date of death."

There is no dispute that Marianne satisfied the requirements of section 31760.2, subdivision (b), entitling her to continuance benefits if she qualified as a "surviving spouse."

7

payments equal to 60 percent of the pensioner's retirement allowance. If the pensioner has no surviving spouse, the benefit is paid to the pensioner's unmarried children under the age of 18 years or attending college, if any. (*Id.*, subds. (a), (c).) If the pensioner has neither minor children nor a surviving spouse, the pensioner's "designated beneficiary" is entitled to a payment of the amount by which the employee's pension contributions exceeded the retirement benefits paid, if any. (*Id.*, subd. (d).)

CERL contains a series of definitions governing the construction of its terms (§ 31455 et seq.), but there is no definition either of "spouse" or "surviving spouse."

### 3. *Standard of Review*

Because interpretation of the provisions of CERL is an issue of law, we review the trial court's decision de novo. (*Rodarte v. Orange County Fire Authority* (2002) 101 Cal.App.4th 19, 22.)

A classic formulation of the judicial procedure for interpreting statutory provisions is found in *Lopez v. Superior Court* (2010) 50 Cal.4th 1055, disapproved on other grounds in *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2: "When engaging in statutory construction, '[w]e begin with the statutory language because it is generally the most reliable indication of legislative intent. [Citation.] If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls. [Citation.]' [Citation.] If the language is susceptible of multiple interpretations, 'the court looks "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.] After considering these extrinsic aids, we "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Id.* at p. 1063.)

" '[P]ension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved.' " (*Bowen v. Board of Retirement* (1986) 42 Cal.3d 572, 577.) "Any ambiguity or uncertainty in the meaning of pension

8

legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute." (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490 (*Ventura County Deputy Sheriffs*).)

**B.  *Deference to the Board's Interpretation***

While the parties agree that we review the trial court's decision de novo, they differ as to the degree of deference, if any, owed to the Board's determination that Marianne is not a surviving spouse for purposes of section 31760.2.

The issue of deference is governed by *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1 (*Yamaha*), in which the court addressed the weight to be given to the interpretation of a state statute by "an administrative agency charged with its enforcement and interpretation." (*Id.* at p. 6.)  In *Yamaha*, the Supreme Court confirmed that the interpretation of a statute is ultimately an issue for the judiciary.  (*Id.* at p. 7.) Nonetheless, while "[c]ourts must . . . independently judge the text of the statute," they also must "tak[e] into account and respect[] the agency's interpretation of its meaning . . . . Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court.  Depending on the context, it may be helpful, enlightening, even convincing.  It may sometimes be of little worth."  (*Id.* at pp. 7–8.)

The weight to be given to an agency's interpretation depends largely on the legal authority exercised by the agency in making the interpretation.  When an agency exercises rule-making authority, enacting regulations to implement a statute under a delegation of "lawmaking power" from the Legislature, those rules are entitled to substantial deference.  (*Yamaha*, *supra*, 19 Cal.4th at pp. 10–11.)  In contrast, when, as here, an agency adopts an interpretation of a statute in the absence of delegated rulemaking authority, "it represents the agency's view of the statute's legal meaning and effect, questions lying within the constitutional domain of the courts."  (*Id.* at p. 11.)  In those circumstances, "[w]hether judicial deference to an agency's interpretation is appropriate and, if so, its extent—the 'weight' it should be given—is . . . fundamentally

9

*situational*," requiring the reviewing court to "consider a complex of factors material to the substantive legal issue before it, the particular agency offering the interpretation, and the comparative weight the factors ought in reason to command." (*Id.* at p. 12.)

The factors to be considered in determining the weight to be given an informal administrative interpretation are divided into two categories—those " 'indicating that the agency has a comparative interpretive advantage over the courts' " and those " 'indicating that the interpretation in question is probably correct.' " (*Yamaha*, *supra*, 19 Cal.4th at p. 12.) In the former camp are "factors that 'assume the agency has expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion.' " (*Ibid.*) In the latter category are "indications of careful consideration by senior agency officials . . . , evidence that the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' [citation] . . . , and indications that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted." (*Id.* at p. 13.)

Applying *Yamaha*, we conclude that, while the Board's interpretation is entitled to "due consideration," it is not entitled to deference. (*Lanquist v. Ventura County Employees' Retirement Assn.* (2015) 235 Cal.App.4th 186, 192–193 [finding county retirement board interpretation of CERL provision entitled to "due consideration"].) As an initial matter, it is not entirely clear that *Yamaha* applies at all. That decision was concerned with interpretive annotations in a business tax law guide published by the Board of Equalization, a state agency with exclusive regulatory authority over the laws concerned. The Board, in contrast, does not have an exclusive grant of authority; it is but one of 20 county retirement boards, all of which have responsibility for administering CERL within their jurisdictions. Deference to the interpretation of each county board could result in inconsistent interpretations of section 31760.2 among the counties having adopted it, with legally separated spouses entitled to continuance benefits in one county but not in a neighboring county. Such inconsistency in the application of a single state statute is inappropriate, if not impermissible. As noted under similar circumstances in

10

*Purifoy v. Howell* (2010) 183 Cal.App.4th 166, "While it is often appropriate for a court to give some deference to an interpretation by a state agency charged with administering a particular statutory scheme [citation], this principle is of little assistance in this case, because the many local public and private agencies that operate shelters may have inconsistent interpretations . . . ." (*Id.* at pp. 182–183.) In rejecting the analogous argument that the Legislature should be deemed to have approved a particular statutory interpretation because some municipalities had applied the interpretation for many years, another court held, "While this principle may apply when a state agency is charged with administering a particular statutory scheme, it has dubious application when numerous cities and counties are charged with applying state law . . . ." (*California Highway Patrol v. Superior Court* (2006) 135 Cal.App.4th 488, 501.) Given the large number of county boards that have not been heard from in this litigation, we find it unwise to defer to the interpretation of just one of their number.[9]

Yet even if we found the general principles of *Yamaha* applicable, we would not defer to the Board's interpretation in these circumstances. First, there is little to indicate that the Board has " 'a comparative . . . advantage over the courts' " in interpreting section 31760.2. As discussed below, the issue depends largely on an analysis of California probate and family law. It is not a technical issue of pension administration, the particular area of the Board's expertise. Further, the Board's interpretation is not long-standing, and it was not formally implemented at or around the time the county adopted section 31760.2. (*Yamaha*, *supra*, 19 Cal.4th at p. 13.) Rather, it appears to have been adopted ad hoc upon consideration of a request for spousal continuance benefits in 2009, and it was based upon an opinion of outside counsel, rather than

---

[9] The Board cites *City of Pleasanton v. Board of Administration* (2012) 211 Cal.App.4th 522, 539, in support of its claim the Board's interpretation is "presumptively correct." That case, however, involved an interpretation of the Public Employees' Retirement Law (PERL; § 20000 et seq.), by CalPERS, the single state agency charged with interpreting PERL. The decision is therefore inapplicable for just the reasons discussed in the text.

11

extended Association deliberations.  Accordingly, we give the Board's interpretation the respect to which a litigant's views are entitled, but we do not defer to it.

**C.  *Interpretation of Section 31760.2***

        **1.  *Plain Meaning of "Surviving Spouse"***

We begin with the plain meaning of the statutory term "surviving spouse," about which there is little dispute.  According to Black's Law Dictionary, "spouse" is "a term that is used to describe a person's husband or wife."  (The Law Dictionary <http://thelawdictionary.org/spouse/> [as of June 30, 2017].)  Because a judgment of legal separation leaves a couple's marital status intact, Marianne remained Richard's wife after entry of the judgment.  (See, e.g., *Lahey*, *supra*, 76 Cal.App.4th at p. 1058 ["There is no question that Frances's marriage to the decedent had not been dissolved or annulled.  A judgment of legal separation leaves the marriage bonds intact."].)  This is consistent with the historical purpose of the remedy of separate maintenance, which was to secure what was effectively alimony for a wife without requiring termination of her marriage.  By outliving Richard, Marianne therefore became his "surviving spouse."  Were we to base our decision solely on the plain meaning of the statutory terms, we would be required to reverse the Board's determination.

While there is little room for ambiguity in the plain meaning of "surviving spouse," we decline to rest our analysis there.  Particularly when a court is construing a term of art, the history of the term's legal interpretation may be a better guide to the Legislature's intended meaning than the its dictionary definition.  (E.g., *In re Marriage of Davis* (2015) 61 Cal.4th 846, 853, 852 [finding "at least some ambiguity" in the " 'term of art,' " " 'living separate and apart' "].)  For that reason, the litigants' legal arguments may reveal a latent ambiguity in an otherwise seemingly unambiguous term.  (See *Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1184 ["even if the word 'disclosure' by itself is unambiguous, considering [the statute] in its larger context, we conclude that its language permits more than one interpretation with respect to inadvertent disclosure"]; *Newark Unified School Dist. v. Superior Court* (2016) 245 Cal.App.4th 887, 899–900 [similar].)

So it is here. The Legislature has expressly excluded a legally separated spouse from the definition of "surviving spouse" in the Probate Code.[10] (Prob. Code, § 78, subd. (d); see *Lahey*, *supra*, 76 Cal.App.4th at pp. 1059–1060.) Although the definitions of the Probate Code do not apply to the provisions of CERL (Prob. Code, § 20 [definitions in Probate Code apply to that code]; § 31455 [definitions included in CERL govern construction of its terms]), the Legislature's exclusion of a legally separated spouse from the term "surviving spouse" in one code certainly suggests a similar exclusion might have been intended elsewhere in the state's statutes.

Because we find the term "surviving spouse" susceptible of more than one meaning in these circumstances, we " 'look[] "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " (*Lopez v. Superior Court*, *supra*, 50 Cal.4th at p. 1063.) Most helpful here are the treatment of "surviving spouse" in other statutory provisions and the public policy governing retirement benefits.[11]

### 2. *Other Statutory Provisions*

The Board relies on Probate Code section 78, which, as mentioned above, defines a legally separated spouse not to be a "surviving spouse" for purposes of the Probate Code. (Prob. Code, § 78, subd. (d); *Lahey*, *supra*, 76 Cal.App.4th at pp. 1059–1060.) As discussed below, however, that section provides no useful guidance to the interpretation of section 31760.2 because the substantive provisions of the Probate Code treat a legally

---

[10] We say "expressly" excluded, but Probate Code section 78, subdivision (d) does not actually refer to a judgment of legal separation. Nonetheless, the language used, "[a] person who was a party to a valid proceeding concluded by an order purporting to terminate all marital or registered domestic partnership property rights," clearly refers to such a judgment, as concluded in *Lahey*. (Prob. Code, § 78, subd. (d); *Lahey, supra*, 76 Cal.App.4th at p. 1059.)

[11] The parties have not cited any legislative history, and our review of the legislative history of various enactments related to section 31760.2 revealed nothing pertinent to this issue.

13

separated spouse, at least as often as not, in the same manner as a "surviving spouse," notwithstanding the Probate Code's general definition.

On one hand, the Probate Code statutes governing intestacy clearly exclude a legally separated spouse from inheriting from his or her intestate spouse, since each of the relevant statutes expressly limits such inheritance to a "surviving spouse." Given the definition of "surviving spouse" in Probate Code section 78, these references have the effect of preventing intestate inheritance by legally separated spouses. (E.g., Prob. Code, §§ 6401 [describing intestate shares of "the surviving spouse"] & 6402 [intestate estate passes to relatives if no "surviving spouse"]; see *Estate of McDaniel* (2008) 161 Cal.App.4th 458, 462 [where husband died intestate after entry of judgment of divorce dividing marital property but before the effective date of the divorce, wife not entitled to intestate share].) Similarly, certain benefits available to one spouse after the death of another, such as temporary use of the family home, the establishment of a probate homestead, and the grant of a family allowance, are limited to surviving spouses, and are therefore denied to legally separated spouses. (See Prob. Code, §§ 6500, 6520, 6540, subd. (a)(1).)

Set against these provisions, however, is a series of statutes that expressly or effectively treat legally separated spouses in the same manner as other surviving spouses, notwithstanding Probate Code section 78. Probate Code section 5040, subdivision (a), for example, states that if a decedent spouse made a "nonprobate transfer" to the other spouse before or during a marriage, and the transferee spouse is not a "surviving spouse" at the time of the transferor's death as a result of the dissolution of the marriage, the transfer fails. The section states, however, that "[a] judgment of legal separation that does not terminate the status of spouses is not a dissolution for purposes of this section," thereby treating a legally separated spouse like any other surviving spouse. (*Ibid*.) Probate Code section 5042 establishes a similar rule with respect to joint tenancies established by a couple before or during a marriage. If, upon the death of one spouse, the other spouse is not a surviving spouse as a result of divorce, the tenancy is "severed as to the decedent's interest." (*Id.*, subd. (a).) Again, a "judgment of legal separation that does

14

not terminate the status of spouses is not a dissolution for purposes of this section."
(*Ibid.*) In the same vein, Probate Code section 6122 states that if a testator's marriage is dissolved after the execution of a will, appointments and dispositions concerning the former spouse in the will are revoked by operation of law. (Prob. Code, § 6122, subd. (a).) As with the prior two sections, this rule does not apply if the couple entered into a judgment of legal separation, rather than a divorce. (*Id.*, subd. (d).) Probate Code section 6227 applies the same result to dispositions and appointments made in a "California statutory will." (*Id.*, subds. (a), (c).) In all of these cases, therefore, a surviving legally separated spouse is treated in the same manner as any other surviving spouse, notwithstanding the contrary definition in Probate Code section 78.

We refrain from attempting to draw a parallel between any particular provision of the Probate Code and section 31760.2 because the circumstances governed by the respective statutes are quite different. For that reason, none of the provisions of the Probate Code provides a useful guide to the Legislature's likely intent with respect to the treatment of legally separated spouses under section 31760.2.[12] Rather, the important point is that legally separated spouses are treated in different ways by different provisions of the Probate Code, notwithstanding the apparent uniformity of treatment suggested by the definition in Probate Code section 78, subdivision (d). Some Probate Code provisions place legally separated spouses in the same category as divorced spouses, while other provisions treat legally separated spouses like other spouses, while divorced

---

[12] Yet if we were to seek guidance in the Probate Code's treatment of legally separated spouses, we would conclude that it favors their inclusion as surviving spouses here. Judgments of legal separation are consensual. A legally separated pensioner can unilaterally prevent his or her spouse from receiving continuance benefits by ending the marriage, which merely requires the filing of an action for divorce. Remaining a party to a judgment of legal separation therefore manifests an implicit intent on the part of the pensioner to permit the surviving spouse to receive such benefits. The Probate Code provisions tend to give effect to such manifestations of intent with respect to legally separated spouses, even as they are revoked with respect to divorced spouses.

15

spouses are handled differently. For that reason, the Probate Code as a whole provides no useful guidance in the interpretation of section 31760.2.[13]

The Board also argues that a specific provision of CERL, section 31760.3, is "consistent with" a finding that legally separated spouses should not be treated as surviving spouses under section 31760.2. Section 31760.3 requires a pensioner to give notice to his or her "current spouse" of "[a]n application for a refund of the member's accumulated contributions, an election of optional settlement, or a change in beneficiary designation." The requirement is waived if the current spouse has "no identifiable community property interest in the benefit" or "[t]he member and the current spouse have executed a marriage settlement agreement . . . which makes the community property law inapplicable to the marriage."[14] (*Id.*, subds. (b), (f).) The Board contends the exclusion

---

[13] On the contrary, as Marianne argues, the best lesson from the Probate Code might be that when the Legislature intends to exclude legally separated spouses from the statutory definition of surviving spouse, it knows how to do so. In the absence of such an exclusion, as in CERL, legally separated spouses should be presumed included among surviving spouses.

[14] Section 31760.3 reads in full:

"The sole purpose of this section is to notify the current spouse of the selection of benefits or change of beneficiary made by a member. Nothing in this section is intended to conflict with community property law. An application for a refund of the member's accumulated contributions, an election of optional settlement, or a change in beneficiary designation shall contain the signature of the current spouse of the member, unless the member declares, in writing under penalty of perjury, any of the following:

"(a) The member is not married.

"(b) The current spouse has no identifiable community property interest in the benefit.

"(c) The member does not know, and has taken all reasonable steps to determine, the whereabouts of the current spouse.

"(d) The current spouse has been advised of the application and has refused to sign the written acknowledgment.

"(e) The current spouse is incapable of executing the acknowledgment because of incapacitating mental or physical condition.

16

for spouses who have executed a marital property agreement includes legally separated spouses and argues that if a pensioner is not required to give notice of these changes to a legally separated spouse, the Legislature must not have viewed a legally separated spouse to have an interest in continuance benefits.[15]

The Board's conclusion does not follow from its premise. The matters about which notice is required by section 31760.3 affect spouses who have a property interest in their spouse's pension. It is for that reason the requirement of notice is waived for spouses having no community property interest in the pension. Spousal continuance benefits do not arise as a result of a surviving spouse's property interest in the pension; rather, they are granted as a matter of statute upon the death of the pensioner, without regard to the spouse's interest, if any, in the pension.[16] The Legislature's exemption of legally separated spouses from notice about the items covered by section 31760.3 therefore provides no indication of its attitude toward the grant of spousal continuance benefits. If anything, section 31760.3 tends to support Marianne's argument since, as the

"(f) The member and the current spouse have executed a marriage settlement agreement pursuant to Part 5 (commencing with Section 1500) of Division 4 of the Family Code which makes the community property law inapplicable to the marriage.

"This section shall not be operative in any county until such time as the board of supervisors shall, by resolution adopted by majority vote, make this section applicable in the county."

[15] The Board's claim that section 31760.3, subdivision (f), which excludes persons who are signatories to a marital agreement, applies to legally separated spouses is debatable. Because the division of property between legally separated spouses can occur by agreement or adjudication, not all legally separated spouses will be covered by subdivision (f). Because it appears that all legally separated spouses would be covered by subdivision (b), which excludes spouses who have "no identifiable community property interest in the benefit," we need not resolve the issue. The Board appears to be correct in arguing that section 31760.3 does not require notification to legally separated spouses.

[16] As Marianne points out, because she married Richard after he retired, she never had a community property interest in his pension. As a result, he was never required to give her notice under section 31760.3, either before or after the judgment of legal separation.

17

Board concedes through its argument, section 31760.3 treats legally separated spouses as "current spouses."

We note there are at least two other state statutes addressing legally separated spouses. Labor Code section 300 includes legally separated spouses within the term "spouse," although it does not require consent from such spouses for an assignment of wages. (*Id.*, subd. (b)(2).) In addition, the homestead exemption treats a legally separated spouse as a spouse if the couple is living together in the same dwelling, but not if they are living separately. (Code Civ. Proc., § 704.710, subd. (d).) While we do not give great weight to these statutes, both suggest legislative references to "spouses" include legally separated spouses, unless the statute states otherwise.

Finally, the Board argues, quoting *Burson*, that because CERL provides for the allocation of a pension that constitutes community property upon the divorce or legal separation of the parties (§ 31685 et seq.), " '[i]t seems hard to imagine that the Legislature utilized these concepts to determine benefit calculations for pre-retirement purposes but purposely excluded them from any post-retirement calculus.' " Both *Burson* and a second trial court decision cited by the Board hold that a legally separated spouse is not entitled to continuance benefits under section 31760.1.[17] The decisions are premised in significant part on section 31685 and immediately subsequent sections, which govern the division of community property interests in a retirement plan upon a couple's divorce or legal separation. As suggested by the Board's quotation from *Burson*, the trial courts reasoned that because section 31685 does not distinguish between divorced and legally separated couples when dividing community property interests, the Legislature must have intended such couples to be treated the same in awarding spousal continuance benefits.

---

[17] Following the close of briefing in this matter, the Board requested that we take judicial notice of a trial court statement of decision in *Carpenter v. Carpenter* (Super. Ct. Ventura County, 2016, No. D368941), in which the court ruled that a legally separated spouse was not entitled to continuance benefits under section 31760.1. We grant the request for judicial notice.

18

The basis for the trial courts' inference is weak. Section 31685 and subsequent sections do not address spousal continuance benefits, implicitly leaving their award to sections 31760.1 or 31760.2. If the Legislature had intended for divorced and legally separated couples to be treated identically with respect to spousal continuance benefits, it could readily have expressed that intent. More important, although divorced and legally separated couples are positioned identically for purposes of the division of community property interests, the issue addressed by section 31685, that is not the case for spousal continuance benefits. A divorced pensioner does not lose the right to make use of spousal continuance benefits. While the divorced pensioner's former spouse loses the right to receive the benefits, the pensioner can remarry, making the subsequent spouse eligible to receive continuance benefits. This is particularly true in counties that have adopted the generous provisions of section 31760.2, which merely require a two-year marriage to qualify a subsequent spouse. In contrast, a legally separated pensioner is unable to confer spousal continuance benefits on a person other than his or her legally separated spouse, since the marriage is not ended by entry of the judgment of legal separation. If a legally separated spouse is ineligible for continuance benefits, in the same manner as a divorced former spouse, a legally separated pensioner forfeits the right to confer spousal continuance benefits. Because of the different policy considerations arising from this distinction, there is little basis for inferring the Legislature's preferred treatment of spousal continuance benefits solely from the treatment of divorced and legally separated couples under section 31685.

### 3. *Public Policy*

The Board fails to articulate any substantial public policy reason for denying continuance benefits to legally separated spouses. The Board's sole policy argument in support of its position is excluding legally separated spouses from the definition of surviving spouse "protects the rights of some [pensioners'] children," since in the absence of a surviving spouse, such benefits are paid to unmarried minor children and children in college, if any. (§ 31760.2, subds. (a), (c).) Because some pensioners may enter into legal separations "because they simply do not like their spouses any more," the

19

Board argues, such pensioners "surely would not want to have their children deprived of benefits, just because they did not formalize their divorce before dying." The Board's argument is largely a solution in the absence of a problem, since minor children are fairly rare among retired decedents. Yet taking the argument at face value, a judgment of legal separation is not, as the Board would have it, an unformalized divorce. Rather, as the discussion above makes clear, a legal separation is a voluntary arrangement chosen as an alternative to divorce. A legally separated pensioner can, at any time, bestow the right to receive continuance benefits on his or her minor children, and deny them to his or her legally separated spouse, merely by converting the legal separation into a divorce. In the absence of such a conversion, there is no reason to presume a pensioner intended his children, rather than his legally separated spouse, to receive the benefits. Excluding a legally separated spouse is therefore more likely to thwart, than to implement, the intent of a decedent pensioner—as it demonstrably would have done in the case of Richard and Marianne.

There are, of course, broader public policy issues associated with the grant of continuance benefits to a legally separated spouse. These, however, are for the Legislature to resolve. In the absence of any statutory indication the Legislature viewed such an award as inappropriate, we will not use the premise of statutory interpretation to second-guess that decision.

**D.** *Conclusion*

For the reasons outlined above, in interpreting section 31760.2 we find no reason to disregard the plain meaning of the term "surviving spouse," which necessarily includes legally separated spouses because a judgment of legal separation does not terminate a marriage. While the division of assets inherent in a legal separation might justify finding the term ambiguous, we are required, all other things being equal, to resolve ambiguities in favor of pensioners. (*Ventura County Deputy Sheriffs*, *supra*, 16 Cal.4th at p. 490.) Even if that were not the case, the Board has provided no persuasive reason for excluding legally separated spouses. As used in various state statutes, legally separated spouses are as often treated like surviving spouses as excluded from their number, and there is no

20

general rule that would be useful in interpreting the pension statutes. In the absence of clear direction from the Legislature, legally separated spouses must be presumed to be included within the term "spouse." Nor is there any general issue of public policy disfavoring the grant of continuance benefits to legally separated spouses. Accordingly, we conclude such spouses must be deemed surviving spouses for purposes of section 31760.2.

## III. DISPOSITION

The judgment of the trial court is reversed. The matter is remanded to the trial court with instructions to enter an order granting Marianne's petition for a writ of mandate. Marianne may recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

21

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.

A149642

22

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. Jill C. Fannin

Counsel:

Renaker Hasselman Scott, Teresa Renaker, Kirsten Scott for Plaintiff and Appellant Marianne Irvin.

Doyle Low and Michael J. Low for Louise Nixon, Lorrina M. Duffy, Ann Fallon, Richard R. Muir, and Michael J. Low as Amici Curiae on behalf of Plaintiff and Appellant Marianne Irvin.

Reed Smith, Harvey L. Leiderman, Jeffrey R. Rieger, and Rachel A. Naor for Defendants and Respondents Contra Costa County Employees' Retirement Association and Contra Costa County Employees' Retirement Association Board of Retirement.